## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------X
AMERICAN EMPIRE SURPLUS LINES                  :
INSURANCE COMPANY                              :    Docket No.  08-CV-1208 (WHP)
                                               :
                    Plaintiff,                 :
                                               :
        -against-                              :
                                               :    DECLARATION OF
WESTCHESTER FIRE INSURANCE COMPANY             :    JAMES J. MCGUIRE
and GRZEGORZ MATERNIK                          :
                                               :
                    Defendants.                :
                                               :
------------------------------------------------------X
```

**JAMES J. MCGUIRE,** declares the following to be true and correct under penalty of perjury pursuant to 28 U.S.C. ' 1746:

1.    I am employed as a Senior Litigation Specialist with American Empire Surplus Lines Insurance Company ("American Empire") and I make this Declaration based upon the files which I maintain (and continue to maintain) in the regular course of business and my personal knowledge.

2.    American Empire issued a Commercial General Liability insurance policy to Monadnock Construction, Inc. ("Monadnock"), bearing Policy No. 4 GL 9 63 25, for the period June 16, 2004 to June 16, 2005.  (See Exhibit "A" attached hereto.)

3.    American Empire has recognized Edgemere By-The-Sea Corp. ("Edgemere") as an additional insured under its Commercial General Liability policy issued to Monadnock in

connection with the action entitled: "Grzegorz Maternik v. Edgemere By-The-Sea Corp., et al." (Index No. 18148-05), which is pending in the Supreme Court of the State of New York, Kings County (the "Underlying Action"). (See Exhibit "B" attached hereto.)

4.    The American Empire policy provides that its coverage is excess to "[a]ny other primary insurance available to [Monadnock and Edgemere] covering liability for damages arising out of the premises or operations for which [Monadnock and Edgemere] have been added as an additional insured by attachment of an endorsement." (See, Section IV.(4)(b)(2) of Exhibit "A" attached hereto.)

5.    On November 15, 2004, Grzegorz Maternik, an employee of Gateway Demolition Corp. ("Gateway"), allegedly sustained bodily injuries after falling from an elevated height while working at a construction project located at 40-11 Beach Channel Drive, Rockaway, New York ("the Premises"). (See ¶ 16 of Exhibit "C" attached hereto.)

6.    Prior to that time, on August 1, 2004, Edgemere, the owner of the Premises, entered into a written agreement with Monadnock to serve as the general contractor for the construction project. (See Exhibit "D" attached hereto.)

7.    On July 17, 2004, Monadnock entered into a written agreement with Gateway, the named insured of Defendant Westchester Fire Insurance Company ("Westchester Fire"), and subcontracted certain demolition work to Gateway. (See Exhibit "E" attached hereto.)

8.      The July 17, 2004 agreement entered into between Monadnock and Gateway provided that prior to commencement of work, Gateway was required to name Monadnock and Edgemere as additional insureds on its insurance policies, including its Commercial General Liability insurance policy.  (See Subcontractor Rider 3 of Exhibit "E" attached hereto.)

9.      The Monadnock/Gateway agreement also provided that Gateway "agrees to defend, indemnify and hold harmless, Monadnock Construction, Inc., [and Edgemere],...against any and all liability, cost, damage, injury and expenses, including but not limited to legal fees, in any way relating to the performance of this Subcontract, provided that such liability is not due to the sole, affirmative negligent acts of themselves." (See Subcontractor Rider 3 of Exhibit "E" attached hereto.)

10.     On or about June 18, 2005, Maternik commenced the Underlying Action seeking recovery for the bodily injuries he alleged sustained on November 15, 2004. (See Exhibit "C" attached hereto.)

11.     On July 18, 2005, American Empire issued correspondence to Monadnock indicating that it would be providing Monadnock with a defense in connection with the Underlying Action. (See Exhibit "F" attached hereto.)

12.     On September 26, 2005, American Empire issued correspondence to Edgemere indicating that it would be providing Edgemere with a defense in connection with the Underlying Action.  (See Exhibit "B" attached hereto.)

13.    On October 6, 2005, defense counsel for Monadnock and Edgemere issued correspondence to Gateway tendering the defense and indemnification of both Monadnock and Edgemere in connection with the Underlying Action. (See Exhibit "G" attached hereto.)

14.    On October 19, 2005, Westchester Fire issued correspondence to defense counsel for Monadnock and Edgemere denying an obligation to provide additional insured coverage, claiming that it had not received timely notice of the matter from either Monadnock or Edgemere. (See Exhibit "H" attached hereto.)

15.    On or about December 15, 2005, as a result of Westchester Fire's declination of additional insured coverage, a third-party action was commenced against Gateway on behalf of both Monadnock and Edgemere. ("Third Party Action"). (See Exhibit "I" attached hereto.)

16.    Westchester Fire has and continues to defend Gateway in the Third-Party Action having accepted the notice provided to it by Gateway as timely.  (See Exhibit "J" attached hereto.)

I DECLARE UNDER PENALTIES OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.  EXECUTED ON MAY 30, 2008, IN CINCINNATI, OHIO.

_____
JAMES J. McGUIRE

**AMERICAN EMPIRE GROUP®**

580 Walnut St., 10th Fl. • P.O. Box 5370 • Cincinnati, OH 45201-5370
513.369.3000 • Fax 513.369.3062 • Claims Department

American Empire Surplus Lines
Insurance Company®

American Empire
Insurance Company®

May 20, 2008

Richard Byrne
L'Abbate, Balkan, Colivita and Contini
1050 Franklin Avenue
Garden City, NY 11530

RE:     Our Insured:          Mondnock Construction
        Your Client:          American Empire Group
        Our File #:           C 61942

Rich:

Enclosed is a certified copy of our policy.  I have emailed you the four volumes of our claim file.

Sincerely,

James J. McGuire, AIC ARM
Senior Litigation Specialist
513/369-5606

# AMERICAN EMPIRE SURPLUS LINES®

## INSURANCE COMPANY

A DELAWARE STOCK COMPANY. ADMINISTRATIVE OFFICES, CINCINNATI, OHIO

# Commercial General Liability Policy

"I hereby certify this to be a true and exact copy of American Empire Surplus Lines Insurance Company policy number 4CL96325."

Len Mikulski
May 20, 2008

MEMBER OF GREAT AMERICAN INSURANCE GROUP

SL 0273H (8/04)

---

**General Service of Suit Endorsement**
**(Not Applicable in Delaware or Pennsylvania)**

Pursuant to any statute of any state or district of the United States of America that makes provision therefor, the Insurer hereby designates the commissioner, superintendent or director of insurance or other officer specified for that purpose in the statute and his or her successors in office and duly authorized deputies in the state where this policy is issued as the Insurer's true and lawful attorney for service of legal process in any action, suit or proceeding brought in the state where this policy is issued by or on behalf of an insured or beneficiary against the Insurer arising out of the insurance issued under this policy. Any legal process received by such attorney for service of legal process shall be forwarded, except as provided below, to the attention of: Eve Cutler Rosen, General Counsel, Great American Insurance Company, 580 Walnut Street, Cincinnati, Ohio 45202.

In California, any legal process received by the Insurer's statutory attorney for service of process shall be forwarded to the attention of: Jere Keprios, The CT Corporation System, 818 West Seventh Street, Los Angeles, California 90017;

In Maine, the Insurer hereby designates CT Corporation System as its attorney for service of legal process in any action relating to this policy, and directs that all such legal process be mailed to: CT Corporation System, One Portland Square, Portland, Maine 04101.

In Oregon, the Insurer and the insured policyholder hereby agree to waive the provisions of Oregon Insurance Code Section 735.490 requiring that service of legal process in any action relating to this policy shall be served on the Insurance agent who registered or delivered this policy, and instead agree that such service of legal process be mailed directly to Eve Cutler Rosen, General Counsel, Great American Insurance Company 580 Walnut Street, Cincinnati, Ohio 45202.

In Rhode Island, the Insurer hereby designates CT Corporation System as its attorney for service of legal process in any action relating to this policy, and directs that all such legal process be mailed to: CT Corporation System, 10 Weybosset Street, Providence, Rhode Island 02903.

The foregoing designations of attorney for service of legal process upon the Insurer shall not constitute a waiver of the Insurer's rights to remove, remand, dismiss or transfer any suit or proceeding from any court, or to commence any suit or other proceeding in any court of competent jurisdiction.

**Special Service of Suit Endorsement**
**(Applicable in Delaware and Pennsylvania Only)**

It is agreed that in the event of the failure of the Insurer(s) or Underwriter(s) hereon to pay any amount claimed to be due hereunder, the Insurer(s) or Underwriter(s) hereon, at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that in any such action instituted under this contract, the Insurer(s) and/or Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Service of process shall be made pursuant to any statute of any state, territory or district within the United States of America that makes provision for interstate and international service of legal process. When making service of process by mail, such process shall be mailed to: Eve Cutler Rosen, General Counsel, Great American Insurance Company, 580 Walnut Street, Cincinnati, Ohio 45202. The above named is authorized and directed to accept service of process on behalf of the Insurer(s) or Underwriters in any such suit and/ or upon the request of the Insured or (reinsured) to give a written undertaking to the Insured (or reinsured) that she will enter a general appearance upon the Insurer(s) or Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America which makes provision therefor, the Insurer(s) or Underwriters hereon hereby designate the Superintendent, Commissioner or Director of insurance or other officer specified for that purpose in the statute or his or her successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance) and hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

The foregoing designation of attorney for service of legal process upon the Insurer shall not constitute a waiver of its rights to remove, remand, dismiss or transfer any suit or proceeding from any court, or to commence any suit or other proceeding in any court of competent jurisdiction.

SL 0274H (8/04)

# COMMON POLICY CONDITIONS

All Coverage Forms included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_Secretary_

_President_

---

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

(Attach Declarations, Schedules, and Endorsements Here)

(Broad Form)

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" include radioactive, toxic or explosive properties.

   "Nuclear material" means "source material," "special nuclear material" or "by-product material."

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

   "Nuclear facility" means:

      (a) Any "nuclear reactor";

      (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

      (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

   "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

   "Property damage" includes all forms of radioactive contamination of property.

Replacing   3 GL 8 44 50



**American Empire Surplus
Lines Insurance Company**
A Delaware Stock Company:
Administrative Offices, Cincinnati, Ohio

**DECLARATIONS**

**COMMERCIAL GENERAL
LIABILITY POLICY**

# POLICY NO.  4 GL 9 63 25

**NAMED INSURED & MAILING ADDRESS:**

Monadnock Construction, Inc.
155 3rd St.
Brooklyn, NY  11231

Security Risk Managers, Inc.
P.O. Box 120099
Nashville, TN  37212

424A          12.5 %

Policy Period:  From  6-16-2004   To  6-16-2005   12:01 A.M. Standard Time at the mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS AND CONDITIONS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| LIMIT OF INSURANCE | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Products-Completed Operations) | $ | 2,000,000. |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ | 1,000,000. |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ | 1,000,000. |
| EACH OCCURRENCE LIMIT | $ | 1,000,000. |
| FIRE DAMAGE LIMIT        *Any One Fire* | $ | 50,000. |
| MEDICAL EXPENSE LIMIT    *Any One Person* | $ | 5,000. |

> Per project
> subject to
> overall limit
> of
> $5,000,000.
>
> See Endt. #2

Amount and Basis of Deductible   $15,000. per occurrence.

Form Of Business:
_____ Individual   _____ Partnership   _____ Joint Venture   _X_ Organization (Other than Partnership or Joint Venture)

Business Description:   General Contractor and Construction Manager

Location of All Premises You Own, Rent or Occupy:   Same as noted above, see Endorsement for additional Locations.

| CLASSIFICATION | CODE NO. | PREMIUM BASIS* | RATES PR/CO | RATES ALL OTHER | ADVANCE PREMIUMS PR/CO | ADVANCE PREMIUMS ALL OTHER |
|---|---|---|---|---|---|---|
| Refer to SL0271A | | | | | | |

Subject to the conditions in SL0297, the minimum earned policy premium will be 25% of the premium payable at inception.

**Premium payable at inception:   $521,075 Deposit; 90% Minimum $468,968.**

*a) Area   b) Beds   c) Total Cost   m) Admissions   p) Payroll   s) Gross Sales   u) Units   r) Gross Receipts

Audit Period:  Annual (Unless Otherwise Stated)   Adjustable at $20.843 per $1,000. of Gross Receipts (Est. Receipts $25,000,000.)

Forms Applicable:  See Endorsement No. 1

ISSUE DATE:  09/24/2004
SL 0527 (7/02)

**COMPANY COPY**

**Authorized Representative**

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc.,  2000

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc.,  2000

CG 00 01 10 01    □

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(l)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

© ISO Properties, Inc., 2000

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    © ISO Properties, Inc., 2000    CG 00 01 10 01

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

© ISO Properties, Inc., 2000

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

© ISO Properties, Inc., 2000

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

    This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

    This insurance is excess over:

    **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

        **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

    **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2000

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

CG 00 01 10 01     □

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

© ISO Properties, Inc., 2000

**b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

   **(1)** Work or operations performed by you or on your behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000
CG 00 01 10 01

# COMMERCIAL
# GENERAL LIABILITY SCHEDULE

**4GL96325**

Policy No: _____

| CLASSIFICATION | CODE NO. | * PREMIUM BASIS | RATES | | PREMIUMS | |
|---|---|---|---|---|---|---|
| | | | PR/CO | ALL OTHER | PR/CO | ALL OTHER |
| General Contractor, Construction Manager, Drywall , Carpentry & Subcontracted Work. | Various | r)  $25,000,000. | Included | $20.843 *Per $1,000. of gross receipts* | Included | $521,075. |
| *Composite Rated based on $25,000,000. of Gross Receipts* | | | | | | |

```
*
 a)  Area
 c)  Total Cost
 m)  Admissions
 p)  Payroll
 s)  Gross Sales
 u)  Units
 r)  Gross Receipts
```

| | | TOTAL | $ **521,075.** |
|---|---|---|---|

The foregoing discloses all hazards insured hereunder known to exist at the effective date of this policy, unless otherwise stated herein.

 **AMERICAN EMPIRE SURPLUS LINES®**
INSURANCE COMPANY

*COMPLETE SPACES BELOW ONLY IF ENDORSEMENT IS NOT ATTACHED TO THE POLICY WHEN ISSUED.*

ENDORSEMENT NO._____ TO POLICY NO. _____

EFFECTIVE DATE _____

NAMED
INSURED _____

PRODUCER _____

(ADDITIONAL) (RETURN) PREMIUM:

DUE HEREWITH                    $ _____

REVISED FUTURE INSTALLMENTS  $ _____

## EXPLANATORY POLICY PREMIUM ENDORSEMENT

The policy conditions relating to premiums shall be amended to incorporate the following:

1. It is understood and agreed that this policy is subject to a minimum policy premium as stated in the Declarations. If the policy remains in force until the expiration date of the policy, this minimum policy premium shall apply unless the audit condition of this policy develops a greater premium. In no event shall the premium be less than the minimum policy premium should the policy remain effective the complete policy term.

2. It is further agreed should this policy be cancelled prior to its expiration date the premium payable to the Company shall be no less than:

   a. The minimum earned policy premium set forth in the Declarations; or if greater,

   b. The actual prorata earned premium, if cancelled by the Company; or,

   c. The actual short rate earned premium, if cancelled by the Named Insured.

3. The actual prorata earned premium shall be the greater of:

   a. The premium determined by applying prorata factors to the minimum policy premium; or

   b. The audit premium for the term the policy was effective.

4. The actual short rate earned premium shall be the greater of:

   a. The premium determined by applying short rate factors to the minimum policy premiums; or,

   b. The audit premium for the term the policy was effective increased by a factor of ten percent as the short rate cancellation penalty.

This endorsement prevails over any conflicting provisions in the policy.

_____
Authorized Representative

SL 0297B (4/97)



**AMERICAN EMPIRE**
**SURPLUS LINES**®
INSURANCE COMPANY

A DELAWARE STOCK COMPANY: ADMINISTRATIVE OFFICES, CINCINNATI, OHIO

**EXCLUSION – ABSOLUTE ASBESTOS**

---

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EXCLUSION – ABSOLUTE ASBESTOS

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

In consideration of the premium charged, it is specifically understood and agreed this insurance does not apply to "bodily injury" or "property damage" arising out of the existence or manufacturing, sale, handling, use or distribution of asbestos or of any product containing asbestos material.  It is further understood and agreed that we will not be liable or responsible to defend you in any action or litigation for any asbestos or asbestos related allegations including the failure to warn.



COMPLETE SPACES BELOW ONLY IF ENDORSEMENT
IS NOT ATTACHED TO THE POLICY WHEN ISSUED.

**AMERICAN EMPIRE
SURPLUS LINES
INSURANCE COMPANY**

ENDORSEMENT NO._____ TO POLICY NO. _____

EFFECTIVE DATE _____

(ADDITIONAL) (RETURN) PREMIUM:

NAMED
INSURED _____

DUE HEREWITH                    $ _____

PRODUCER

REVISED FUTURE INSTALLMENTS  $ _____

## SUBSIDENCE OF LAND EXCLUSION
### (Simplified Program)

It is hereby understood and agreed that this insurance does not apply to bodily injury or property damage included within the completed operations hazard or the products hazard when caused by, resulting from, contributed to or aggravated by the subsidence of land.

Subsidence shall mean earth movement, including but not limited to landslide, mudflow, earth sinking and earth rising or shifting.

SL 0339 (10/90)



**AMERICAN EMPIRE
SURPLUS LINES®**
INSURANCE COMPANY

# EXCLUSION — LEAD CONTAMINATION

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

EXCLUSION — LEAD CONTAMINATION

This endorsement modifies coverage found under the following coverage part:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

COVERAGE A,    BODILY INJURY AND PROPERTY DAMAGE LIABILITY;
COVERAGE B,    PERSONAL AND ADVERTISING INJURY LIABILITY; AND
COVERAGE C,    MEDICAL PAYMENTS

This endorsement modifies the above COVERAGES to exclude any "occurrence" which results in:

a.    "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form:

b.    "Property Damage" arising from any form of lead;

c.    "Personal Injury" arising from any form of lead;

d.    "Advertising Injury" arising from any form of lead;

e.    Medical Payments arising from any form of lead;

f.    Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or in any way respond to, or assess the effects of lead.

g.    Any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

SL 0367 (2/94)

*COMPLETE SPACES BELOW ONLY IF ENDORSEMENT IS NOT ATTACHED TO THE POLICY WHEN ISSUED.*

ENDORSEMENT NO. _____ TO POLICY NO. _____ EFFECTIVE DATE _____

| NAMED INSURED _____ | (ADDITIONAL) (RETURN) PREMIUM: |
|---|---|
| | DUE HEREWITH                    $ _____ |
| | REVISED FUTURE |
| PRODUCER _____ | INSTALLMENTS                    $ _____ |

## VOLUNTARY AUDIT ENDORSEMENT

It is agreed the insured shall voluntarily report to the Company its' actual gross receipts on an annual basis and pay to the Company any additional premiums in excess of the deposit premium as are determined as being due the Company.

_____

Authorized Representative

SL 0434 (8/96)



AMERICAN EMPIRE
SURPLUS LINES
INSURANCE COMPANY

EXCLUSION-DESIGNATED WORK:
EXTERIOR INSULATION AND
FINISH SYSTEM

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

EXCLUSION-DESIGNATED WORK:  EXTERIOR INSULATION
AND FINISH SYSTEM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SCHEDULE

Description of your work:

1.  The design, manufacture, construction, fabrication, preparation,
    installation, application, maintenance or repair, including remodeling,
    service, correction, or replacement of an "exterior insulation and
    finish system" (commonly referred to as synthetic stucco) or any part
    thereof, or any substantially similar system or any part thereof,
    including the application or use of conditioners, primers, accessories,
    flashings, coatings, caulkings or sealants in connection with such
    a system.

2.  Any work or operations with respect to any exterior component, fixture
    or feature of any structure if any "exterior insulation and finish
    system" is used on any part of that structure.

For the purposes of this endorsement an "exterior insulation and finish
system" means an exterior cladding or finish system used on any part of
any structure and consisting of:

    a) a rigid or semi-rigid insulation board made of expanded polystyrene
       or other materials, and

    b) the adhesive and/or mechanical fasteners used to attach the
       insulation board to the substrate, and

    c) a reinforced base coat, and

    d) a finish coat providing surface texture and color.

(If no entry appears above, information required to complete this endorsement will
be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in
the "products - completed operations hazard" and arising out of "your work" shown in
the Schedule.

SL0466(7/97)

 **AMERICAN EMPIRE SURPLUS LINES®** INSURANCE COMPANY

EXCLUSION - MOLD, SPORES OR FUNGUS

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

## EXCLUSION – MOLD, SPORES OR FUNGUS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART CG 0001

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the actual or threatened existence, growth, release, transmission, migration, dispersal or exposure to "mold," "spores" or "fungus;"

(a) including, but not limited to, "bodily injury," "property damage," or "personal and advertising injury" resulting from any actual or threatened exposure to, inhalation, absorption or ingestion of, or physical contact with "mold," "spores" or "fungus;"

(b) including, but not limited to, "bodily injury," "property damage," or "personal and advertising injury" resulting from any actual or threatened "mold," "spores" or "fungus" upon any real property or personal property, product or work, premises, site or location, or any other tangible property of any insured or any other person(s) or organization(s), located anywhere in the world;

(c) including, but not limited to, "bodily injury," "property damage," or "personal and advertising injury" resulting from any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "mold," "spores" or "fungus."

"Mold," "spores" or "fungus" means any mold, spores or fungus of any type or nature whatsoever that can cause or threaten harm to any living organism or can cause or threaten physical damage, deterioration, loss of use or loss of value or marketability, to any tangible property whatsoever. This includes, but is not limited to, any type(s) of mold, spores or fungus that are harmful or potentially harmful to health or welfare or that are damaging or potentially damaging to tangible property or that can otherwise cause or threaten to cause "bodily injury," "property damage," or "personal and advertising injury."

SL 0520 (04/03)

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

**A. Rejection of Offer**

**You have rejected the offer of terrorism coverage for Acts of Terrorism** that are certified under the Terrorism Risk Insurance Act of 2002 as an Act of Terrorism. An exclusion of terrorism losses has been made a part of this policy.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses **insured under the federal program**. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. **You have rejected this offer of coverage.**

SL 0528 (2/03)



**AMERICAN EMPIRE GROUP™**

American Empire Surplus Lines®
Insurance Company

American Empire Insurance Company®

## TO OUR PRODUCERS AND POLICYHOLDERS

### Compliance With U.S. Economic Sanctions Laws

Under various federal laws, the Office of Foreign Assets Control (OFAC), a division of the U.S. Department of the Treasury, administers and enforces economic sanctions against certain countries and groups of individuals, such as terrorists and narcotics traffickers.

**These laws prohibit United States citizens, corporations, and others from engaging in virtually all business transactions with certain countries, entities and individuals designated on the list of Specially Designated Nationals and Blocked Persons (the SDN list).**

Insurance companies, their agents and brokers are prohibited from making payments to anyone on the SDN list or those otherwise subject to U.S. Economic Sanction Laws. It is the intention of American Empire to do what is necessary to insure its compliance with all applicable federal laws and regulations relating to economic sanctions.

You can access the U.S. Department of the Treasury OFAC website at **www.ustreas.gov/offices/enforcement/ofac/** for additional information or contact your legal counsel if you have any questions pertaining to this matter.

**This communication is for informational purposes only. It is not intended to be an exhaustive treatment of the legal issues discussed, nor is it intended to furnish legal advice appropriate to any particular circumstances. This information is not intended to create and does not create an attorney-client relationship, and this information does not constitute an attorney-client communication.**

MEMBER OF **GREAT AMERICAN.**
INSURANCE GROUP

SLO529 (06/03)

POLICY NUMBER:   4GL96325

**COMMERCIAL GENERAL LIABILITY**
CG 03 00 01 96

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM    or | PER OCCURRENCE |
| Bodily Injury Liability | $ N/A | $ N/A |
| OR | | |
| Property Damage Liability | $ N/A | $ N/A |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ N/A | $15,000. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

CG 03 00 01 96

Copyright, Insurance Services Office, Inc., 1994

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

CG 03 00 01 96

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER:    4GL96325

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Name of Person or Organization:**    All entities required by written contract to be included for coverage as additional insured's in respect to operations performed by the Named Insured or on their behalf.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

Copyright, Insurance Services Office, Inc.,  1984

Page 1 of 1

CG 20 26 11 85

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER:   4GL96325

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of your work:**

This policy excludes any and all projects covered under a (CCIP) Contractor Controlled Insurance Program.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

CG 21 34 01 87          Copyright, Insurance Services Office, Inc.,  1986          Page 1 of 1          □

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

  **(1)** Whether the insured may be liable as an employer or in any other capacity; and

  **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

  **(1)** Whether the insured may be liable as an employer or in any other capacity; and

  **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc.,  1998

POLICY NUMBER: 4GL96325

COMMERCIAL GENERAL LIABILITY
CG 21 54 01 96

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description and Location of Operation(s):**

Any project, location or operation performed by the "Insured"; the "Insured's" agents' or subcontractors' with respect to construction or demolition operations or other contracting operations insured under a (wrap-up); or any and all (CCIP) Projects; or any similar rating plans.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

Copyright, Insurance Services Office, Inc., 1994

COMMERCIAL GENERAL LIABILITY
CG 21 73 11 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

Any injury or damage arising, directly or indirectly, out of "a certified act of terrorism".

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

COMMERCIAL GENERAL LIABILITY
CG 22 43 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER:    4GL96325

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART.
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**    All entities when required by a written contract executed prior to loss, to provide this extension of coverage.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

We waive any right of recovery we may have against the person or organization shown in the Schedule because of payments we make for injury or damage arising out of "your work" done under a contract with that person or organization. The waiver applies only to the person or organization shown in the Schedule.

CG 24 04 11 85

Copyright, Insurance Services Office, Inc.,  1984

Page 1 of 1    ☐



**AMERICAN EMPIRE**
**SURPLUS LINES**
INSURANCE COMPANY

| | |
|---|---|
| Endorsement No. | 1 |
| Policy No. | 4GL96325 |
| Effective Date | 6-16-2004 |
| Additional Premium: | Included |

Named Insured:    Monadnock Construction, Inc.

# SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| SL 0527 | Declarations Commercial General Liability |
| CG 0001 | Commercial General Liability Coverage Form  (10/01) |
| SL 0271A | Commercial General Liability Schedule |
| SL 0273 | Commercial General Liability Policy Jacket |
| SL 0297B | Explanation Policy Premium Endorsement |
| SL0298B | Exclusion – Absolute Asbestos |
| SL 0339 | Subsidence of Land Exclusion |
| SL 0367 | Exclusion – Lead Contamination |
| SL 0434 | Voluntary Audit Endorsement |
| SL 0466 | Exclusion – Designated Work:  Exterior Insulation & Finish System |
| SL 0520 | Exclusion – Mold, Spores or Fungus |
| SL 0528 | Disclosure Pursuant to Terrorism Risk Insurance Act of 2002 |
| SL 0529 | Compliance with U.S. Economic Sanctions Laws |
| CG 0300 | Deductible Liability Insurance |
| CG 2026 | Additional Insured – Designated Person or Organization |
| CG 2134 | Exclusion – Designated Work |
| CG 2147 | Employment – Related Practices Exclusion |
| CG 2149 | Total Pollution Exclusion Endorsement |
| CG 2154 | Exclusion – Designated Operations Covered By A Consolidated (Wrap-Up) Insurance Program |
| CG 2173 | Exclusion of Certified Acts of Terrorism |
| CG 2243 | Exclusion – Engineers, Architects or Surveyors Professional Liability |
| CG 2404 | Waiver of Transfer of Rights of Recovery Against Others |
| Endorsement No. 1 | Schedule of Forms and Endorsements |
| Endorsement No. 2 | Designated Construction Projects General Aggregate Limit |
| Endorsement No. 3 | Named Insured's |
| Endorsement No. 4 | Railroad Exclusion – Deletion |

Authorized Representative

SL 0494  (2/00)

**AMERICAN EMPIRE
SURPLUS LINES**
INSURANCE COMPANY

| | |
|---|---|
| Endorsement No. | 2 |
| Policy No. | 4GL96325 |
| Effective Date | 6-16-2004 |
| Additional Premium: | Included |

Named Insured:   Monadnock Construction, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DESIGNATED CONSTRUCTION PROJECT(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

Designated Construction Projects:

**All Projects**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A.  For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

   1.  A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

   However, the most we will pay under the Designated Construction Project General Aggregate Limit for all projects combined is $5,000,000.

   2.  The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

      a.  Insureds;
      b.  Claims made or "suits" brought; or
      c.  Persons or organizations making claims or bringing "suits".

   3.  Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project.  Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

   4.  The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply.  However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

SL 0494  (2/00)

**Authorized Representative**

B.  For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

   1.  Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

   2.  Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

C.  When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

D.  If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

E.  The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

_____
**Authorized Representative**

SL 0494  (2/00)

**AMERICAN EMPIRE**
**SURPLUS LINES**
INSURANCE COMPANY

| | |
|---|---|
| Endorsement No. | 3 |
| Policy No. | 4GL96325 |
| Effective Date | 6-16-2004 |
| Additional Premium: | Included |

Named Insured:    Monadnock Construction, Inc.

## NAMED INSUREDS

MONADNOCK CONSTRUCTION, INC.

NILE STRUCTURAL CORP.

155 – 3RD STREET, LLC

**Authorized Representative**

SL 0494   (2/00)

| AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY | Endorsement No.    4 |
|---|---|
| | Policy No.    4GL96325 |
| | Effective Date    6-16-2004 |
| | Additional Premium:    Included |
| Named Insured:    Monadnock Construction, Inc. | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**RAILROAD EXCLUSION - DELETION**

Form CG0001 (10/01) Section V - DEFINITIONS (page 13 of 16) – is amended as follows:

ITEM C OF DEFINITION 9 IS DELETED IN ITS ENTIRETY, WHERE REQUIRED BY WRITTEN CONTRACT WITH THE NAMED INSURED.

**Authorized Representative**

SL 0494  (2/00)

POLICY NUMBER:    4GL96325
ENDORSEMENT NO.:    5
EFFECTIVE DATE:    5-12-2005
ADDITIONAL PREMIUM:    NIL

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 10 01**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| | |
|---|---|
| **Name of Person or Organization:** | New York City Transit Authority, Manhattan and Bronx Surface Transit Operating Authority (MABSTOA), Staten Island Rapid Transit Operating Authority (SIRTOA), Metropolitan Transportation Authority (MTA), its subsidiaries and affiliated companies and the city of New York. |
| **Location And Description of Completed Operations:** | |
| | Installation of construction fence and removal of asphalt and top 8 feet of soil. 100 Jay Street, Brooklyn, New York |
| **Additional Premium:**    **Nil** | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

© ISO Properties, Inc.,  2000

POLICY NUMBER:      4GL96325
ENDORSEMENT NO.:   6
EFFECTIVE DATE:      5-19-2005

**COMMERCIAL GENERAL LIABILITY**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

1.  Designation of Premises (Part Leased to You):   ALL LOCATIONS AS REQUIRED BY WRITTEN CONTRACT

2.  Name of Person or Organization (Additional Insured):   ALL ENTITIES AS REQUIRED BY WRITTEN CONTRACT

3.  Additional Premium:   Nil

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1.  Any "occurrence" which takes place after you cease to be a tenant in that premises.

2.  Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.



**AMERICAN EMPIRE
SURPLUS LINES**
INSURANCE COMPANY

| | |
|---|---|
| Endorsement No. | 7 |
| Policy No. | 4GL96325 |
| Effective Date | 6-16-2005 |
| Additional Premium: | $207,600. |

Named Insured:   Monadnock Construction, Inc.

# AUDIT ENDORSEMENT

PREMIUM ADJUSTMENT FOR THE PERIOD:    6-16-2004    TO    6-16-2005

PREMIUM BASIS:   PER $1,000. OF RECEIPTS

ADJUSTMENT:   ANNUAL

1.   EXPOSURE FOR THE PERIOD          $ 34,960,169.
     RATE                           X $          20.843
     EARNED PREMIUM                   $     728,675.

     EARNED PREMIUM FOR THE PERIOD:    ------------------   $ 728,675.

2.   ORIGINAL PREMIUM BILLED          $ 521,075.
     EARNED PREMIUM THROUGH  6-16-2005   $ 728,675.

     ADDITIONAL PREMIUM DUE           $ 207,600.

_____
Authorized Representative

SL 0494   (2/00)



**AMERICAN EMPIRE
SURPLUS LINES**
INSURANCE COMPANY

| | |
|---|---|
| Endorsement No. | 8 |
| Policy No. | 4GL96325 |
| Effective Date | 6-16-2005 |
| Return Premium: | $207,600. |

Named Insured:    Monadnock Construction, Inc.

In consideration of the return premium of $207,600., it is hereby understood and agreed that Endorsement No. 7 is declared null and void and replaced by the following:

# AUDIT ENDORSEMENT

It is hereby understood and agreed that the Minimum Premium applies as respects the Final Audit for the period from 6-16-2004 to 6-16-2005.

**(Balance Even)**

All remaining terms and conditions of this policy are unchanged



_____
**Authorized Representative**

SL 0494   (2/00)

September 26, 2005

**CERTIFIED MAIL / RETURN RECEIPT REQUESTED**

Edgemere By-The-Sea Corp.
155 – 3rd Street
Brooklyn, NY.   11231

RE:    Company:        American Empire Surplus Lines Insurance Company
          Our Claim No.:    C61942-500
          Named Insured:   Monadnock Construction
          Date of Loss:     11/15/2004
          Policy:          4GL96325    (6/16/2004 to 6/16/2005)
          Policy Limits:    $1,000,000
          Policy:          4CX06898    (6/16/2004 to 6/16/2005)
          Limits:          $2,000,000 excess $1,000,000
          Plaintiff:        Maternik
          Suit Styled:      Maternik vs. Edgmere By-The-Sea and Monadnock
                          Construction
          Jurisdiction:     Kings County, NY. Supreme Court
          Amount of Suit:  Unspecified
          Defense Firm:   Wilson, Elser, Moskowitz et al.

Ladies and Gentlemen:

We hereby acknowledge receipt of the captioned Summons and Complaint filed against Edgemere By-The-Sea Corporation. We have assigned the defense of this case to the captioned defense firm.

As this matter is now in litigation, we ask that you do not discuss it with anyone except a representative of our Company, a member of the named law firm, or your personal attorney should you decide to employ one.

The insurance policy, which protects Edgemere By-The-Sea Corporation for this loss, provides a limit of coverage as stated above. Should a trial of this suit result in the rendering of a judgment against Edgemere By-The-Sea Corporation in excess of your policy limits, Edgemere By-The-Sea Corporation will be responsible for the excess amount. To that extent Edgemere By-The-Sea Corporation may have an uninsured interest in this litigation and for that reason Edgemere By-The-Sea Corporation may wish to employ personal counsel at your own expense. Whether Edgemere By-The-Sea Corporation does so is your own decision and can be made at any time while this suit is pending.

If Edgemere By-The-Sea Corporation has an excess or umbrella insurance policy, you should place that carrier on notice of this loss.

AEC  00457

2

The defense of this matter is being provided to you while reserving all rights under both the policy and the law. The reasons for this reservation of rights are outlined below:

1.    The policy contains Form CG2134  01/87 entitled EXCLUSION-DESIGNATED WORK. This form states:

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Part
Products/Completed Operations Liability Coverage Part

**SCHEDULE**

**Description of your work:**

This policy excludes any and all projects under a CCIP Contractor Controlled Insurance Program.

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

To the extent this form is applicable, coverage would not be afforded for defense or indemnity related to this litigation.

2.    This policy contains form CG2154 1/96  entitled **Exclusion-DESIGNATED OPERATIONS COVERED BY A CONSOLIDATEDN(WRAP-UP0 INSURANCE PROGRAM.**  This form states:

This endorsement modifies insurance provided under the following:  Commercial General Liability Coverage Part

**SCHEDULE**

Description and Location of Operation(s):

**Any project, location or operation performed by the "Insured"; the "insured's" agents' or subcontractors' with respect to construction or demolition operations or other contracting operations Insured under a (wrap-up) or any similar rating plan.**

The following exclusion is added to paragraph 2., Exclusions of Coverage A – Bodily Injury and Property Damage Liability (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations

AEC  00458

3

hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

(1)    Provides coverage identical to that provided by this Coverage Part;

(2)    Has limits adequate to cover all claims; or

(3)    Remains in effect.

To the extent this exclusion is determined to be applicable, coverage for defense and indemnity of this matter would not be afforded.

Please keep the named law firm or this office advised at all times of Edgemere By-The-Sea Corporation's current address.  If the above address is not correct or should change at any time, please notify us immediately.  Your cooperation in this and all other respects is required in order to keep in force the protection provided by your policy.

Sincerely,

Larry Potrafke
Vice President-Claims

Cc    Security Risk Managers
      PO Box 120099
      Nashville, TN.  37212

      Cook Hall & Hyde
      PO Box 9100
      Bethpage, NY.  11714

      Robert T. Adams
      Wilson, Elser, Moskowitz, Edelman, & Dicker, LLP
      3 Gannett Drive
      White Plains, NY 10604

AEC 00459

Security Insurance    Fax:                     Jul  7 2005 10:59am  P002/015
HALL & HUL                                     No. 4178    P.  7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------X
GRZEGORZ MATERNIK,

                              Plaintiff,            **VERIFIED COMPLAINT**

          -against-                                Index #: 15143/05

EDGEMERE BY-THE-SEA CORP. and MONADNOCK
CONSTRUCTION, INC.,

                              Defendants.
------------------------------------------------X

          Plaintiff, by his attorneys, The Law Offices of Daniel

W. Isaacs, PLLC, complaining of the Defendants, respectfully

alleges, upon information and belief, as follows:

          1.    That this action falls within one or more of the

exemptions set forth in CPLR § 1602.

          2.    That on November 15, 2004, and at all times

hereinafter mentioned, defendant Edgemere by-the-Sea Corp.

(hereinafter "Edgemere"), was and still is a domestic corporation

duly organized and existing under and by virtue of the laws of the

State of New York.

          3.    That on November 15, 2004, and at all times

hereinafter mentioned, the principal place of business of

defendant, Edgemere, was and is in the County of Kings, City and

State of New York.

          4.    That on November 15, 2004, and at all times

hereinafter mentioned, defendant Monadnock Construction, Inc.

(hereinafter "Monadnock"), was and still is a domestic corporation

duly organized and existing under and by virtue of the laws of the

State of New York.

          5.    That on November 15, 2004, at all times hereinafter

Security Insuance    Fax:    Jul 7 2005 10:59am P009/015
HALL & RIVE    No. 4778  P. 8

mentioned, defendant, Edgemere, owned a building and premises located at 40-11 Beach Channel Drive in the County of Queens, City and State of New York.

6.    That on November 15, 2004, and at all times hereinafter mentioned the defendant, Edgemere, operated the building and premises located at 40-11 Channel Drive, Queens, New York.

7.    That on November 15, 2004, and at all times hereinafter mentioned, the defendant, Edgemere, maintained the building and premises located at 40-11 Beach Channel Drive Queens, New York.

8.    That on November 15, 2004, and at all times hereinafter mentioned the defendant, Edgemere, controlled the building and premises located at 40-11 Beach Channel Drive Queens, New York.

9.    That upon information and belief, and at all times hereinafter mentioned the defendant, Edgemere, entered into a contract with defendant Monadnock for work to be performed at 40-11 Beach Channel Drive Queens, New York including the demolition of the existing building and building of a new structure in its place and stead.

10.    That on November 15, 2004, and at all times herein mentioned, the premises located at 40-11 Beach Channel Drive County of Queens, City and State of New York, was in the process of demolition.

11.    That on November 15, 2004, plaintiff, Grzegorz Maternik, was employed by Gateway Demolition Corp. as a laborer.

2

12. That on November 15, 2004, a contract existed between the defendants, Edgemere and Monadnock.

13. That on November 15, 2004, a contract existed between Gateway Demolition Corp. and Monadnock.

14. That on November 15, 2004, a contract existed between Gateway Demolition Corp. and Edgemere.

15. Pursuant to said contracts, plaintiff, Grzegorz Maternik, while in the employ of Gateway Demolition Corp., was on the premises, building, and property of 40-11 Beach Channel Drive Queens, New York and was engaged in demolition work.

16. That on November 15, 2004, at said premises, plaintiff was seriously injured while working at the above-mentioned premises.

17. Pursuant to said contract, plaintiff, Grzegorz Maternik, while in the employ of Gateway Demolition Corp. was on the building and property of 40-11 Beach Channel Drive, Queens, New York and was engaged in demolition work.

### AS AND FOR A FIRST CAUSE OF ACTION
### ON BEHALF OF GRZEGORZ MATERNIK

18. That on November 15, 2004, while Plaintiff, Grzegorz Maternik, was lawfully and carefully working at the aforesaid premises, he was caused to be on the roof of the building when it collapsed causing him to be injured, due to the negligence of the defendants, Edgemere and Monadnock, their agents, servants and/or employees in the ownership, operation, direction, supervision, possession, control, construction, rehabilitation and/or alteration of said premises and Plaintiff sustained the injuries hereinafter alleged.

3

Security Insurance    Fax:    Jul 7 2005 10:59am P011/015
NO.4778 P. 10

19. That defendants Edgemere and Monadnock, their agents, servants and/or employees, were negligent, reckless and careless in the ownership, operation, maintenance, control, possession, supervision, direction, construction, inspection, management, renovation, demolition, rehabilitation and/or alteration of the said premises in that they failed to provide the Plaintiff with a safe place to work; and defendants Edgemere and Monadnock were otherwise reckless and careless and negligent.

20. That defendants Edgemere and Monadnock, their agents, servants and/or employees had actual and/or constructive notice of the dangerous and defective conditions existing upon the work site.

21. That the accident, and the injuries resulting there from, were caused solely and wholly by reason of the negligence of Defendants Edgemere and Monadnock, their agents, servants and/or employees without any fault, want of care or culpable conduct on the part of the Plaintiff contributing thereto.

22. That by reason of the foregoing, the Plaintiff has been rendered sick, sore, lame, maimed and disabled, and so remains. That he has been unable to attend to his usual vocation and activities and that he has been obliged to expend, and will in the future expend, sums of money for medical aid and attention, and that by reason of the foregoing Plaintiff has been damaged in the amount that exceeds the jurisdictional limits of all lower courts.

4

AEC 00385

Security Insurance    Fax:    No. 4//8    P. 11
HALL & HYDE

## AS AND FOR A SECOND CAUSE OF ACTION
## ON BEHALF OF GRZEGORZ MATERNIK

23.   Plaintiff Grzegorz Maternik repeats, reiterates and realleges each and every allegation contained in the First Cause of Action, with the same force and effect as though same were more fully set forth at length herein.

24.   On November 15, 2004, there existed, in full force and effect, within the State of New York, Section 200 of the Labor Law of the State of New York which required all contractors, owners, and their agents to provide, keep and maintain a reasonably safe place for plaintiff to work, especially and particularly where the work was of a dangerous character, the defendants knew or should have known, in the course of their supervision, management and control of the demolition and/or construction site that such dangers existed and/or were unknown to plaintiff and others lawfully on premises.

25.   That by reason of the negligence of the Defendants as aforesaid, the Defendants Edgemere and Monadnock violated Section 200 of the Labor Law of the State of New York.

26.   That by reason of defendants Edgemere's and Monadnock's violation of section 200 of the Labor Law, plaintiff was injured.

27.   That by reason of the foregoing, the Plaintiff has been damaged in the amount that exceeds the jurisdictional limits of all lower courts.

5

Security Insurance    Fax:    ----- Jul 7 2005 10:59am P013/315
HALL & HYDE    No. 4778   P. 12

## AS AND FOR A THIRD CAUSE OF ACTION
### ON BEHALF OF GRZEGORZ MATERNIK

28.  Plaintiff Grzegorz Maternik repeats, reiterates and realleges each and every allegation contained in the First and Second Causes of Action, together with the same force and effect as though same were more fully set forth at length herein.

29.  That on November 15, 2004, there existed, in full force and effect, within the State of New York, Section 240 of the Labor Law of the State of New York.

30.  That by reason of the negligence of defendants Edgemere and Monadnock, as aforesaid, defendants Edgemere and Monadnock, violated Section 240 of the Labor Law of the State of New York.

31.    That by reason of defendant Edgemere's and Monadnock's violation of section 240 of the Labor Law, plaintiff was seriously injured.

32.  That by reason of the foregoing, the plaintiff has been damaged in an amount in excess of the jurisdictional limits of all lower courts.

## AS AND FOR A FOURTH CAUSE OF ACTION
### ON BEHALF OF GRZEGORZ MATERNIK

33.. Plaintiff Grzegorz Maternik repeats, reiterates and realleges each and every allegation contained in the First, Second and Third Causes of Action, together with the same force and effect as though same were more fully set forth at length herein.

34.  That on November 15, 2004, there existed, in full force and effect, within the State of New York, Section 241 of the

6

Labor Law of the State of New York.

35. That by reason of the negligence of defendants Edgemere and Monadnock, as aforesaid, defendants Edgemere and Monadnock violated Section 241 of the Labor Law of the State of New York.

36. That by reason of defendants Edgemere's and Monadnock's violation of Section 241 of the Labor Law, plaintiff was seriously injured.

37. That by reason of the foregoing, the Plaintiff has been damaged in an amount in excess of the jurisdictional limits of all lower courts.

WHEREFORE, Plaintiff demands judgment against the Defendants on the First Cause of Action in an amount in excess of the jurisdictional limits of all lower courts; on the Second Cause of Action in an amount in excess of the jurisdictional limits of all lower courts; on the Third Cause of Action in an amount in excess of the jurisdictional limits of all lower courts and on the Fourth Cause of Action in an amount in excess of the jurisdictional limits of all lower courts, together with the costs and disbursements of this action.

Dated:    New York, New York
          June 10, 2005

Yours, etc.

LAW OFFICES OF DANIEL W. ISAACS, PLLC

By: _____
    DANIEL W. ISAACS
    Attorneys for Plaintiff
    Grzegorz Maternik
    401 Broadway Suite 612
    New York, New York 10013
    (212) 925-3000

7

AMERICAN EMPIRE
Security Insuance    Fax:    —   Jul 7 2005 11:00am  P015/015
HALL & HYDE    No. 4778   P. 14

**VERIFICATION**

I, Daniel W. Isaacs, Esq., am the principle of The Law
Offices of Daniel W. Isaacs, PLLC, attorneys for the Plaintiff
in the within action, duly admitted to practice in the Courts
of the State of New York, hereby affirms the following
statements to be true under the penalties of perjury, pursuant
to Rule 2016 of the Civil Practice Laws & Rules of the State of
New York:

That I have read the foregoing Complaint and know the
contents thereof; that based on the information derived from
the files maintained in my office, which is maintained in the
normal course of business, and those facts and documents
provided to me by Grzegorz Maternik, the contents of the
Complaint are true to my own knowledge except as to those
matters alleged to be upon information and belief, and as to
those matters, I believe them to be true.

The reason this affirmation is not made by the Plaintiff
is that the Plaintiff resides in a county other than where the
undersigned maintains his office for the practice of law.

Dated: New York, New York
       June 10, 2005

DANIEL W. ISAACS

1

07/07/2005 THU 11:58  [TX/RX NO 6669]  015

07/11/2005 MON 14:06  [TX/RX NO 7301]  015

AEC 00389

Index No. 18148/05                                                01082.00133

SUPREME COURT OF THE STATE OF NEW YORK / COUNTY OF KINGS

GRZEGORZ MATERNIK,

                                              Plaintiff(s),

            -against-

EDGEMERE BY-THE-SEA CORP. and MONADNOCK CONSTRUCTION, INC.,

                                              Defendant(s).

EDGEMERE BY-THE-SEA CORP. and MONADNOCK CONSTRUCTION, INC.,

                                              Third-Party Plaintiff(s),

            -against-

GATEWAY DEMOLITION CORP.,

                                              Third-Party Defendant(s).

## STATEMENT PURSUANT TO CPLR 3402(B), THIRD PARTY SUMMONS AND COMPLAINT

### WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

*Attorneys For*    Defendants/Third Party Plaintiff's – Edgemere By-The-Sea and Monadnock
                   Construction, Inc.

                            3 Gannett Drive
                  White Plains, New York  10604-3407
                            (914) 323-7000

Dated,   New York, New York          WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
         December 13, 2005            Attorneys for  Defendants

                                      Office and Post Office Address
                                      File No.  01082.00133

To All Counsel

Attorneys(s) for Respective Parties

AEC  00390

# ΑΙΑ® Document A107™ – 1997

## Abbreviated Standard Form of Agreement Between Owner and Contractor for Construction Projects of Limited Scope
### where the basis of payment is a STIPULATED SUM

AGREEMENT made as of the First        day of    August        in the year Two Thousand
and Four
(In words, indicate day, month and year)

BETWEEN the Owner:
(Name, address and other information)

Edgemere-by-the-Sea Corp.
155-3rd Street
Brooklyn, New York 11231

and the Contractor:
(Name, address and other information)

Monadnock Construction, Inc.
155-3rd Street
Brooklyn, New York 11231

the Project is:
(Name and location)

Dreamile Phase B
Rockaway, Queens
112 houses; 87 single family and 38 two family, located within an eight block area
bounded by Beach Channel Drive on the north, Rockaway Beach Boulevard on the south,
Beach 40th Street on the east and Beach 45th Street on the west.

the Architect is:
(Name, address and other information)

Gruzen Samton LLP
320 West 13th Street
New York, New York 10014-0900

The Owner and Contractor agree as follows.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This Document includes abbreviated General Conditions and should not be used with other general conditions.

This document has been approved and endorsed by The Associated General Contractors of America.

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:33 on 02/14/2005 under Order No.1000108438_1 which expires on 9/28/2005, and is not for resale.
User Notes:                                                                    (3086282900)

1

AEC 00490

## ARTICLE 1  THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others. Contractor shall take control of the entire site as of the date of the transfer of title to the NYC Partnership Housing Development Fund Company, Inc. and Contractor shall remain in control of the entire site until all work is completed including any change orders or alternates, or the Contract is terminated as otherwise provided herein, or with regard to any individual house, when it is sold, whichever is earlier.

## ARTICLE 2  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 2.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

August 1, 2004

§ 2.2 The Contract Time shall be measured from the date of commencement.

§ 2.3 The Contractor shall achieve Substantial Completion of the entire Work not later than        days from the date of commencement or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

October 16, 2006

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*

## ARTICLE 3  CONTRACT SUM

§ 3.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be  ($—)-Twenty Two Million Seven Hundred Eighty Four Thousand Seven Hundred and Eighty Five Dollars ($22,784,785.00) subject to additions and deletions as provided in the Contract Documents.

§ 3.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires.)*

None.  All alternates shall be at the sole discretion of the Owner by change order.

§ 3.3 Unit prices, if any, are as follows:

| Description | Units | Price ($ 0.00) |
|---|---|---|

## ARTICLE 4  PAYMENTS

§ 4.1 PROGRESS PAYMENTS
§ 4.1.1 Based upon Applications for Payment submitted to the ~~Architect~~ Owner by the Contractor and Certificates for Payment issued by the ~~Architect~~ Owner, the Owner shall make progress payments on account of the Contract

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:33 on 02/14/2005 under Order No.1000108438_1 which expires on 3/29/2005, and is not for resale.
User Notes:                                                                                                              (3086262900)

2

AEC 00491

Aug. 31. 2005  3:21PM    COOK HALL & HYDE                    718 gNo. 5495,   P. 5₃

Sum to the Contractor as provided below and elsewhere in the Contract Documents. The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

The Contract Sum shall be paid according to the Trade Payment Breakdown attached as Schedule A. Payment shall be made for work completed in a month less retainage by the 20ᵗʰ day of the following month provided that applications for payment were received by the Owner by the 5ᵗʰ day of that following month.

§ 4.1.2 Provided that an Application for Payment is received by the Architect not later than the ——— day of a month, the Owner shall make payment to the Contractor not later than the ——— day of the same month. If an Application for Payment is received by the Architect after the date fixed above, payment shall be made by the Owner not later than ——— (———) days after the Architect receives the Application for Payment.

§ 4.1.3 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
(Insert rate of interest agreed upon, if any.)

Ten percent (10%) per annum only after a 15 day grace period.

(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)

§ 4.2 FINAL PAYMENT
§ 4.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

    .1  the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 17.2, and to satisfy other requirements, if any, which extend beyond final payment; and

    .2  a final Certificate for Payment has been issued by the Architect. Owner.

§ 4.2.2 The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follow:

ARTICLE 5. ENUMERATION OF CONTRACT DOCUMENTS
§ 5.1 The Contract Documents are listed in Article 6 and, except for Modifications issued after execution of this Agreement, are enumerated as follows:

§ 5.1.1 The Agreement is this executed 1997 edition of the Abbreviated Standard Form of Agreement Between Owner and Contractor, AIA Document A107-1997.

§ 5.1.2 The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated ——— and are as follows:

| Document | Title | Pages |
|---|---|---|
| All specifications and construction notes are included on the plans and drawings. | | |

§ 5.1.2 The Specifications are those contained in the Project Manual dated as in Section 5.1.2, and are as follows:
(Either list the Specifications here or refer to an exhibit attached to this Agreement.)

| Section | Title | Pages |
|---|---|---|
| All specifications and construction notes are included on the plans and drawings. | | |

AIA Document A107™ – 1997, Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:23 on 02/14/2005 under Order No.1000106438_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                (3086282900)

3

Aug. 31. 2005  3:21PM    COOK HALL & HYDE                    718 No. 5495    P. 6

**§ 5.1.4** The Drawings are as follows, and are dated          unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

Title of Drawings exhibit                          Title                    Date
Number
See attached Schedule B:  Index of Drawings

**§ 5.1.5** The Addenda, if any, are as follows:
Number                                    Date                        Pages

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding
requirements are also enumerated in this Article 5.

**§ 5.1.6** Other documents, if any, forming part of the Contract Documents are as follows:
*(List any additional documents which are intended to form part of the Contract Documents.)*

GENERAL CONDITIONS

**ARTICLE 6    GENERAL PROVISIONS**
**§ 6.1 THE CONTRACT DOCUMENTS**
The Contract Documents consist of this Agreement with Conditions of the Contract (General, Supplementary and
other Conditions), Drawings, Specifications, Addenda issued prior to the execution of this Agreement, other
documents listed in this Agreement and Modifications issued after execution of this Agreement. A Modification is
(1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change
Directive or (4) a written order for a minor change in the Work issued by the Architect. The intent of the Contract
Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor.
The Contract Documents are complementary, and what is required by one shall be as binding as if required by all;
performance by the Contractor shall be required to the extent consistent with the Contract Documents and
reasonably inferable from them as being necessary to produce the indicated results.

**§ 6.2 THE CONTRACT**
The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated
agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written
or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be
construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the
Owner and a Subcontractor or sub-subcontractor, (3) between the Owner and Architect or (4) between any persons
or entities other than the Owner and Contractor.

**§ 6.3 THE WORK**
The term "Work" means the construction and services required by the Contract Documents, whether completed or
partially completed, and includes all other labor, materials, equipment and services provided or to be provided by
the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

**§ 6.4 EXECUTION OF THE CONTRACT**
Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become
generally familiar with local conditions under which the Work is to be performed and correlated personal
observations with requirements of the Contract Documents.

**§ 6.5 OWNERSHIP AND USE OF ARCHITECT'S DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE**
The Drawings, Specifications and other documents, including those in electronic form, prepared by the Architect
and the Architect's consultants are Instruments of Service through which the Work to be executed by the Contractor
is described. The Contractor may retain one record set. Neither the Contractor nor any Subcontractor, sub-
subcontractor or material or equipment supplier shall own or claim a copyright in the Drawings, Specifications and

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects.
All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or
distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum
extent possible under the law. This document was produced by AIA software at 08:15:58 on 02/14/2005 under Order No.1000108438_1 which expires on
5/28/2006, and is not for resale.                                                           (5062232900)
User Notes:

4

AEC 00493

other documents prepared by the Architect or the Architect's consultants, and unless otherwise indicated the Architect and the Architect's consultants shall be deemed the authors of them and will retain all common law, statutory and other reserved rights, in addition to the copyrights. All copies of them, except the Contractor's record set, shall be returned or suitably accounted for to the Architect, on request, upon completion of the Work. The Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants, and copies thereof furnished to the Contractor, are for use solely with respect to this Project. They are not to be used by the Contractor or any Subcontractor, sub-subcontractor or material or equipment supplier on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants. The Contractor, Subcontractors, sub-subcontractors and material or equipment suppliers are authorized to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this authorization shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' copyrights or other reserved rights.

## ARTICLE 7  OWNER

**§ 7.1 INFORMATION AND SERVICES REQUIRED OF THE OWNER**

§ 7.1.1 The Owner shall furnish and pay for surveys and a legal description of the site.

§ 7.1.2 The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

§ 7.1.3 Except for permits and fees which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for other necessary approvals, easements, assessments and charges required for the construction, use or occupancy of permanent structures or permanent changes in existing facilities.

**§ 7.2 OWNER'S RIGHT TO STOP THE WORK**

If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents, or persistently fails to carry out the Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order is eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity.

**§ 7.3 OWNER'S RIGHT TO CARRY OUT THE WORK**

If the Contractor defaults or persistently fails or neglects to carry out the Work in accordance with the Contract Documents, or fails to perform a provision of the Contract, the Owner, after 10 days' written notice to the Contractor and without prejudice to any other remedy the Owner may have, may make good such deficiencies and may deduct the reasonable cost thereof, including Owner's expenses and compensation for the Architect's services made necessary thereby, from the payment then or thereafter due the Contractor.

## ARTICLE 8  CONTRACTOR

**§ 8.1 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR**

§ 8.1.1 Since the Contract Documents are complementary, before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 7.1.1, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions or inconsistencies in the Contract Documents; however, any errors, omissions or inconsistencies discovered by the Contractor shall be reported promptly to the Architect as a request for information in such form as the Architect may require.

§ 8.1.2 Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents.

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:33 on 02/14/2005 under Order No.1000108438_1 which expires on 9/26/2005, and is not for resale.
User Notes:                                                                                                    (2066282600)

5

AEC 00494

### § 8.2 SUPERVISION AND CONSTRUCTION PROCEDURES

§ 8.2.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures, and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall be fully and solely responsible for the jobsite safety thereof unless the Contractor gives timely written notice to the Owner and Architect that such means, methods, techniques, sequences or procedures may not be safe.

§ 8.2.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

### § 8.3 LABOR AND MATERIALS

§ 8.3.1 Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

§ 8.3.2 The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

§ 8.3.3 The Contractor shall deliver, handle, store and install materials in accordance with manufacturers' instructions.

§ 8.3.4 The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order.

### § 8.4 WARRANTY

The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform with the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation or normal wear and tear and normal usage.

### § 8.5 TAXES

The Contractor shall pay sales, consumer, use and other similar taxes which are legally enacted when bids are received or negotiations concluded.

### § 8.6 PERMITS, FEES AND NOTICES

§ 8.6.1 Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work.

§ 8.6.2 The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work. The Contractor shall promptly notify the Architect and Owner if the Drawings and Specifications are observed by the Contractor to be at variance therewith. If the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Architect and Owner, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:33 on 02/14/2005 under Order No.1000108422_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                                        (3036282500)

**6**

AEC 00495

### § 8.7 SUBMITTALS

§ 8.7.1 The Contractor shall review for compliance with the Contract Documents, approve in writing and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness. The Work shall be in accordance with approved submittals.

§ 8.7.2 Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents.

### § 8.8 USE OF SITE

The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

### § 8.9 CUTTING AND PATCHING

The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

### § 8.10 CLEANING UP

The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus material.

### § 8.11 ROYALTIES, PATENTS AND COPYRIGHTS

The Contractor shall pay all royalties and license fees; shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect, unless the Contractor has reason to believe that there is an infringement of patent or copyright and fails to promptly furnish such information to the Architect.

### § 8.12 ACCESS TO WORK

The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

### § 8.13 INDEMNIFICATION

§ 8.13.1 To the fullest extent permitted by law and to the extent claims, damages, losses or expenses are not covered by Project Management Protective Liability Insurance purchased by the Contractor in accordance with Section 16.3, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 8.13.

§ 8.13.2 In claims against any person or entity indemnified under this Section 8.13 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 8.13.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

### ARTICLE 9 — ARCHITECT'S ADMINISTRATION OF THE CONTRACT

### ARTICLE 9    ADMINISTRATION OF THE CONTRACT

§ 9.1 The Architect will provide assist the Owner in the administration of the Contract and will be an Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Section 17.2.

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:33 on 02/14/2005 under Order No.1000128438_1 which expires on 3/22/2005, and is not for resale.
User Notes:    (3086282900)

7

AEC 00496

§ 9.2 The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 8.2.1.

§ 9.3 The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

§ 9.4 Based on the Architect's evaluations of the Work and of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts amounts if required by the Lender or the Owner.

§ 9.5 The Architect Owner will have authority to reject Work that does not conform to the Contract Documents.

§ 9.6 The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents.

§ 9.7 The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect will make initial decisions on all claims, disputes and other matters in question between the Owner and Contractor but will not be liable for results of any interpretations or decisions so rendered in good faith.

§ 9.8 The Architect's Owner's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

§ 9.9 Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

§ 9.10 CLAIMS AND DISPUTES

§ 9.10.1 Claims, disputes and other matters in question arising out of or relating to this Contract, including those alleging an error or omission by the Architect but excluding those arising under Section 15.2, shall be referred initially to the Architect for decision. Such matters, except those relating to aesthetic effect and except those waived as provided for in Section 9.11 and Sections 14.5.3 and 14.5.4, shall, after initial decision by the Architect or 30 days after submission of the matter to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

§ 9.10.2 If a claim, dispute or other matter in question relates to or is the subject of a mechanic's lien, the party asserting such matter may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the matter by the Architect, by mediation or by arbitration.

§ 9.10.3 The parties shall endeavor to resolve their disputes by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings,

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:28 on 02/14/2005 under Order No.1000108438_1 which expires on 3/26/2005, and is not for resale.
User Notes:                                                                                        (3086228800)

8

AEC 00497

which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

§ 9.10.4 Claims, disputes and other matters in question arising out of or relating to the Contract that are not resolved by mediation, except matters relating to aesthetic effect and except those waived as provided for in Section 9.11 and Sections 14.5.3 and 14.5.4, shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joinder or in any other manner, any person or entity not a party to the Agreement under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect or any of the Architect's employees or consultants. The agreement herein among the parties to the Agreement and any other written agreement to arbitrate referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

§ 9.11 CLAIMS FOR CONSEQUENTIAL DAMAGES
The Contractor and Owner waive claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:

1    damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

2    damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 19. Nothing contained in this Section 9.11 shall be deemed to preclude an award of liquidated direct damages, when applicable, in accordance with the requirements of the Contract Documents.

ARTICLE 10: SUBCONTRACTORS
§ 10.1 A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site.

§ 10.2 Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of the Subcontractors for each of the principal portions of the Work. The Contractor shall not contract with any Subcontractor to whom the Owner or Architect has made reasonable and timely objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

§ 10.3 Contracts between the Contractor and Subcontractors shall (1) require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by the terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by the Contract Documents, assumes toward the Owner and Architect, and (2) allow the Subcontractor the benefit of all rights, remedies and redress afforded to the Contractor by these Contract Documents.

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:33 on 02/14/2005 under Order No.1000108436_1 which expires on 9/28/2005, and is not for resale.                                                                  (3086282900)
User Notes:

9

AEC 00498

## ARTICLE 11  OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS

§ 11.1 The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under conditions of the contract identical or substantially similar to these, including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such claim as provided in Section 9.10.

§ 11.2 The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's activities with theirs as required by the Contract Documents.

§ 11.3 The Owner shall be reimbursed by the Contractor for costs incurred by the Owner which are payable to a separate contractor because of delays, improperly timed activities or defective construction of the Contractor. The Owner shall be responsible to the Contractor for costs incurred by the Contractor because of delays, improperly timed activities, damage to the Work or defective construction of a separate contractor.

## ARTICLE 12  CHANGES IN THE WORK

§ 12.1 The Owner, without invalidating the Contract, may order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly. Such changes in the Work shall be authorized by written Change Order signed by the Owner, Owner and Contractor and Architect, or by written Construction Change Directive signed by the Owner and Architect Owner.

§ 12.2 The cost or credit to the Owner from a change in the Work shall be determined by mutual agreement of the parties or, in the case of a Construction Change Directive, by the Contractor's cost of labor, material, equipment, and reasonable overhead and profit.

§ 12.3 The Architect, with the Owner's written authorization, will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

§ 12.4 If concealed or unknown physical conditions are encountered at the site that differ materially from those indicated in the Contract Documents or from those conditions ordinarily found to exist, the Contract Sum and Contract Time shall be equitably adjusted.

## ARTICLE 13  TIME

§ 13.1 Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

§ 13.2 The date of Substantial Completion is the date certified by the Architect in accordance with Section 14.4.2.

§ 13.3 If the Contractor is delayed at any time in the commencement or progress of the Work by changes ordered in the Work, by labor disputes, fire, unusual delay in deliveries, abnormal adverse weather conditions not reasonably anticipatable, unavoidable casualties or any causes beyond the Contractor's control, or by other causes which the Architect Owner determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect Owner may determine, subject to the provisions of Section 9.10.

## ARTICLE 14  PAYMENTS AND COMPLETION

§ 14.1 APPLICATIONS FOR PAYMENT

§ 14.1.1 Payments shall be made as provided in Article 4 of this Agreement. Applications for Payment shall be in a form satisfactory to the Architect Owner and any Lender.

§ 14.1.2 The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:33 on 02/14/2005 under Order No.1000108433_1 which expires on 3/29/2005, and is not for resale.
User Notes:                                                                              (3086282900)

10

AEC 00499

Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or other encumbrances adverse to the Owner's interests.

**§ 14.2 CERTIFICATES FOR PAYMENT**
**§ 14.2.1** If requested by the Owner, The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 14.2.3.

**§ 14.2.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluations of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**§ 14.2.3** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 14.2.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 14.2.1. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.2.2, because of:

.1     defective Work not remedied;

.2     third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;

.3     failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;

.4     reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

.5     damage to the Owner or another contractor;

.6     reasonable evidence that the Work will not be completed within the Contract Time and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7     persistent failure to carry out the Work in accordance with the Contract Documents.

**§ 14.2.4** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**§ 14.3 PAYMENTS TO THE CONTRACTOR**
**§ 14.3.1** The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:15:23 on 02/14/2005 under Order No.1000109436_1 which expires on 2/28/2005, and is not for resale.
User Notes:                                                                                            (3089282900)

11

AEC 00500

such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to sub-subcontractors in similar manner.

§ 14.3.2 Neither the Owner nor Architect shall have an obligation to pay or see to the payment of money to a Subcontractor except as may otherwise be required by law.

§ 14.3.3 A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 14.4 SUBSTANTIAL COMPLETION**
§ 14.4.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

§ 14.4.2 When the Architect determines that the Work or designated portion thereof is substantially complete, the Architect will issue a Certificate of Substantial Completion which shall establish the date of Substantial Completion, establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion. Upon the issuance of the Certificate of Substantial Completion, the Architect will submit it to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate.

**§ 14.5 FINAL COMPLETION AND FINAL PAYMENT**
§ 14.5.1 Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions stated in Section 14.5.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

§ 14.5.2 Final payment shall not become due until the Contractor has delivered to the Owner a complete release of all liens arising out of this Contract or receipts in full covering all labor, materials and equipment for which a lien could be filed, or a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including costs and reasonable attorneys' fees.

§ 14.5.3 The making of final payment shall constitute a waiver of claims by the Owner except those arising from:
.1  liens, claims, security interests or encumbrances arising out of the Contract and unsettled;
.2  failure of the Work to comply with the requirements of the Contract Documents; or
.3  terms of special warranties required by the Contract Documents.

§ 14.5.4 Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

**ARTICLE 15  PROTECTION OF PERSONS AND PROPERTY**
**§ 15.1 SAFETY PRECAUTIONS AND PROGRAMS**
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract. The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:
.1  employees on the Work and other persons who may be affected thereby;
.2  the Work and materials and equipment to be incorporated therein; and

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1953, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:33 on 02/14/2005 under Order No.1000108438_1 which expires on 3/29/2006, and is not for resale.
User Notes:                                                                                       (3036282900)

12

AEC 00501

Aug. 31. 2005  3:25PM    COOK HALL & HYDE    ?18 No. 5495    P. 15

.3    other property at the site or adjacent thereto.

The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons and property and their protection from damage, injury or loss. The Contractor shall promptly remedy damage and loss to property caused in whole or in part by the Contractor, a Subcontractor, a sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 15.1.2 and 15.1.3, except for damage or loss attributable to acts or omissions of the Owner or Architect or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 8.13.

### § 15.2 HAZARDOUS MATERIALS
**§ 15.2.1** If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shutdown, delay and start-up, which adjustments shall be accomplished as provided in Article 12 of this Agreement.

**§ 15.2.2** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 15.2.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

**§ 15.2.3** If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

### ARTICLE 16 INSURANCE
**§ 16.1** The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located insurance for protection from claims under workers' compensation acts and other employee benefit acts which are applicable, claims for damages because of bodily injury, including death, and claims for damages, other than to the Work itself, to property which may arise out of or result from the Contractor's operations under the Contract, whether such operations be by the Contractor or by a Subcontractor or anyone directly or indirectly employed by any of them. This insurance shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater, and shall include contractual liability insurance applicable to the Contractor's obligations. Certificates of Insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. Each policy shall contain a provision that the policy will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner.

### § 16.2 OWNER'S LIABILITY INSURANCE
The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

### § 16.3 PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE
**§ 16.3.1** Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:33 on 02/14/2005 under Order No.1000108438_1 which expires on 3/20/2005, and is not for resale.
User Notes:    (3086282900)

13

AEC  00502

Aug. 31. 2005  3:25PM    COOK HALL & HYDE    718 No. 5495    P. 16

such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Section 16.1.

§ 16.3.2 To the extent damages are covered by Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

§ 16.3.3 The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability insurance under Section 16.1. Contractor shall include the Owner, The Hudson Companies Incorporated, Hudson Residential Services, Inc., the New York City Partnership Housing Development Fund Company, Inc., Housing Partnership Development Fund Corporation, The City of New York, The New York City Department of Housing Preservation Development, and Wachovia Bank, National Association, their successors and assigns, as additional insureds on the Contractor's Liability Insurance coverage under Section 16.1.

§ 16.4 PROPERTY INSURANCE
§ 16.4.1 Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance on an "all-risk" policy form, including builder's risk, in the amount of the initial Contract Sum, plus the value of subsequent modifications and cost of materials supplied and installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. deductibles in such amounts as required by the Lender. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 14.5 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 16.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and sub-subcontractors in the Project.

§ 16.4.2 The Owner shall file a copy of each policy with the Contractor before an exposure to loss may occur. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced until at least 30 days' prior written notice has been given to the Contractor.

§ 16.5 WAIVERS OF SUBROGATION
§ 16.5.1 The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 11, if any, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to Section 16.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 11, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ 16.5.2 A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require subcontractors to make payments to their sub-subcontractors in similar manner.

ARTICLE 17  CORRECTION OF WORK
§ 17.1 The Contractor shall promptly correct Work rejected by the Architect Owner or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:13:33 on 02/14/2005 under Order No.1000108438_1 which expires on 3/28/2005, and is not for resale.
User Notes:    (3086282900)

.14

AEC 00503

~~inspections and compensation for the Architect's services and expenses made necessary thereby,~~ Work shall be at the Contractor's expense.

§ 17.2 In addition to the Contractor's obligations under Section 8.4, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 14.4.2, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty.

§ 17.3 If the Contractor fails to correct nonconforming Work within a reasonable time, the Owner may correct it in accordance with Section 7.3.

§ 17.4 The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

§ 17.5 The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Article 17.

**ARTICLE 18   MISCELLANEOUS PROVISIONS**
§ 18.1 ASSIGNMENT OF CONTRACT
Neither party to the Contract shall assign the Contract without written consent of the other.

§ 18.2 GOVERNING LAW
The Contract shall be governed by the law of the place where the Project is located.

§ 18.3 TESTS AND INSPECTIONS
Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded.

§ 18.4 COMMENCEMENT OF STATUTORY LIMITATION PERIOD
As between Owner and Contractor, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued:

.1     not later than the date of Substantial Completion for acts or failures to act occurring prior to the relevant date of Substantial Completion;

.2     not later than the date of issuance of the final Certificate for Payment for acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to the issuance of the final Certificate for Payment; and

.3     not later than the date of the relevant act or failure to act by the Contractor for acts or failures to act occurring after the date of the final Certificate for Payment.

**ARTICLE 19   TERMINATION OF THE CONTRACT**
§ 19.1 TERMINATION BY THE CONTRACTOR
If the Architect fails to recommend payment for a period of 30 days through no fault of the Contractor, or if the Owner fails to make payment thereon for a period of 30 days, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner payment for Work

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:15:23 on 02/14/2005 under Order No.1000108436_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                          (3082282900)

15

AEC 00504

executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages applicable to the Project.

### § 19.2 TERMINATION BY THE OWNER

§ 19.2.1 The Owner may terminate the Contract if the Contractor:

    .1    persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

    .2    fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

    .3    persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or

    .4    otherwise is guilty of substantial breach of a provision of the Contract Documents.

§ 19.2.2 When any of the above reasons exists, the Owner, upon certification by the Architect that sufficient cause exists to justify such action, may, without prejudice to any other remedy the Owner may have and after giving the Contractor seven days' written notice, terminate the Contract and take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor and may finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

§ 19.2.3 When the Owner terminates the Contract for one of the reasons stated in Section 19.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

§ 19.2.4 If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

### ARTICLE 20  OTHER CONDITIONS OR PROVISIONS

"Owner" as used herein refers to Edgemere-by-the-Sea Corp., a corporation that has entered into an agreement with the City of New York to have access to the site for preliminary work and that will enter into an agreement with the New York City Partnership Housing Development Fund Company, Inc., to develop and build the Project. Contractor acknowledges that it is familiar with these agreements and that it recognizes that the City of New York is the fee owner of the property and that the NYC Partnership Housing Development Fund Company, Inc. will be the fee owner of the property during construction.

To the fullest extent allowed by law, the Contractor shall fully protect, indemnify, and hold Owner, The New York City Partnership Housing Development Fund Co., Inc. (Sponsor) and the City of New York, acting through the Department of Housing Preservation and Development harmless from and against any and all liabilities, obligations, related claims, causes of action, judgements, damages, penalties, costs and expenses (including without limitation attorneys' fees and expenses) arising out of or relating to any (i) accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Site or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways, (ii) uses, nonuse or conditions in, on or about the Site or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways, (iii) failure on the part of the Contractor to perform or comply with any terms of this Agreement or (iv) performance of any labor or serves or the furnishing of any materials or other property in respect of the Site or the part thereof.

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:15:23 on 02/14/2005 under Order No.1000108438_1 which expires on 2/28/2006, and is not for resale.
User Notes:                (3058282000)

**16**

AEC 00505

Aug. 31. 2005  3:26PM    COOK HALL & HYDEN                    718 No. 54953  P. 19

This Agreement entered into as of the day and year first written above.

OWNER (Signature)                         CONTRACTOR (Signature)

William E. Fowler, President              Nicholas Lembo, President
(Printed name and title)                  (Printed name and title)

AIA Document A107™ – 1997. Copyright © 1936, 1951, 1958, 1961, 1963, 1966, 1970, 1974, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:15:33 on 02/14/2005 under Order No.1000108438_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                      (3086282900)

17

AEC 00506

AGREEMENT BETWEEN OWNER AND CONTRACTOR -
EDGEMERE PHASE B PARTNERSHIP HOMES

SCHEDULE A

Trade Payment Breakdown

| HARD COSTS | | PER HOME | 112 Homes TOTAL |
|---|---|---|---|
| Demolition and Asbestos Remediation | | 531 | 59,435 |
| Excavation / Backfill / Underpinning | | 8,354 | 935,677 |
| Foundation / Slab / Piles | | 20,004 | 2,240,400 |
| Site Work (incl concrete) & Fencing | | 11,530 | 1,291,327 |
| Rough Carpentry | incl with Modules | 0 | 0 |
| Finish Carpentry | | 301 | 33,677 |
| Insulation and Caulking | | 1,031 | 115,513 |
| Sheetrock & Tape | incl with Modules | 0 | 0 |
| Windows | | 0 | 0 |
| Doors & Hardware | incl with Modules | 0 | 0 |
| Kitchen Cabinets | incl with Modules | 0 | 0 |
| Ceramic Tile & Flooring | incl with Modules | 0 | 0 |
| Carpeting | | 1,955 | 218,992 |
| Painting | | 2,097 | 234,846 |
| Roofing (flashing, coping, roof penetrations, etc) | | 1,173 | 131,430 |
| Plumbing & Heating | | 2,940 | 329,238 |
| Storm & Sanitary Drainage | | | 502,630 |
| Sprinkler | | 0 | 0 |
| Electrical | | 1,084 | 121,420 |
| Masonry | | 205 | 22,925 |
| Siding | (Cement siding) | 11,392 | 1,275,895 |
| Metals | | 4,236 | 474,406 |
| Ventilation (incl w/ heating on 1 fau) | | 556 | 62,299 |
| Appliances | | 901 | 100,858 |
| Landscaping | | 880 | 98,603 |
| Asphalt Paving (off-site) | | 1,770 | 198,286 |
| Furnish and Install Modular Units | | 96,426 | 10,799,719 |
| General Conditions | | 12,320 | 1,379,846 |
| Insurance | | 5,080 | 568,952 |
| Security | | 4,520 | 506,252 |
| Contingency | | 9,662 | 1,082,159 |
| TOTAL HARD COSTS | | 198,948 | 22,784,785 |

AEC 00507

AGREEMENT BETWEEN OWNER AND CONTRACTOR –
EDGEMERE PHASE B PARTNERSHIP HOMES

SCHEDULE B
Index of Drawings, Page 1

Architectural

| | | |
|---|---|---|
| A-000 | Cover Sheet | November 23, 2004 |
| A-010 | Zoning Summary | November 23, 2004 |
| A-011 | Zoning Plan | November 23, 2004 |
| A-012 | Zoning Plan | November 23, 2004 |
| A-020 | Site Plan | November 23, 2004 |
| A-021 | Partial Site Plan & Typical Details | November 23, 2004 |
| A-022 | Partial Site Plan & Yard Detail | November 23, 2004 |
| A-023 | Partial Site Plan | November 23, 2004 |
| A-024 | Partial Site Plan | November 23, 2004 |
| A-025 | Partial Site Plan | November 23, 2004 |
| A-100 | Typical Floor Plans - 1F & 1F-S Units | November 23, 2004 |
| A-101 | Typical Floor Plans - 2F Units | November 23, 2004 |
| A-200 | Typical Elevations - 1F & 1F-S Units | November 23, 2004 |
| A-201 | Typical Elevations - 2F & Combined Units | November 23, 2004 |
| A-300 | Typical Building Sections | November 23, 2004 |
| A-500 | Wall Sections: 1F & 1F-S Units | November 23, 2004 |
| A-501 | Wall Sections: 2F Units | November 23, 2004 |
| A-502 | Interior Details | November 23, 2004 |
| A-503 | Interior Details | November 23, 2004 |
| A-504 | Exterior Details | November 23, 2004 |
| A-600 | Door, Window & Partition Types & Schedules | November 23, 2004 |
| M-100 | Boiler and Plumbing Riser Diagram | November 23, 2004 |

Specifications

| | | |
|---|---|---|
| Manufacturer's Summary of Work (Capsys) | | August 2, 2004 |

Structural

| | | |
|---|---|---|
| S1.00 | Key Plan (Units #1 to #112) | November 30, 2004 |
| S1.01 | Foundation Plan (Units #1 to #7) | July 07, 2004 |
| S1.02 | Foundation Plan (Units #8 to #16) | July 07, 2004 |
| S1.03 | Foundation Plan (Units #17 to #24) | July 07, 2004 |
| S1.04 | Foundation Plan (Units #25 to #32) | July 07, 2004 |
| S1.05 | Foundation Plan (Units #33 to #39) | November 30, 2004 |
| S1.06 | Foundation Plan (Units #40 to #46) | July 07, 2004 |
| S1.07 | Foundation Plan (Units #47 to #56) | July 07, 2004 |
| S1.08 | Foundation Plan (Units #57 to #63) | July 07, 2004 |
| S1.09 | Foundation Plan (Units #64 to #70) | July 07, 2004 |
| S1.10 | Foundation Plan (Units #71 to #77) | July 07, 2004 |
| S1.11 | Foundation Plan (Units #78 to #84) | July 07, 2004 |
| S1.12 | Foundation Plan (Units #85 to #92) | July 07, 2004 |
| S1.13 | Foundation Plan (Units #93 to #99) | July 07, 2004 |
| S1.14 | Foundation Plan (Units #100 to #105) | July 07, 2004 |
| S1.15 | Foundation Plan (Units #106 to #112) | July 07, 2004 |
| S2.00 | General Notes, Typical Details, & Schedules | July 07, 2004 |
| S3.00 | Foundation Details | July 07, 2004 |

AEC 00508

AGREEMENT BETWEEN OWNER AND CONTRACTOR
EDGEMERE PHASE B PARTNERSHIP HOMES

SCHEDULE B
Index of Drawings, Page 2

Sewer Design and Hydraulic Calculations

| | | |
|---|---|---|
| MP | Site Connection Master Plan | September 02, 2004 |
| SD/1-1 | Sewer Design - Block 15829 & p/o 15830 | September 02, 2004 |
| SD/1-2 | Stormwater Drainage Computations - Block 15829 & p/o 15830 | September 02, 2004 |
| SD/2-1 | Sewer Design - Block p/o 15830 & p/o 15831 | September 02, 2004 |
| SD/2-2 | Stormwater Drainage Computations - Block p/o 15830 & p/o 15831 | September 02, 2004 |
| SD/3-1 | Sewer Design - Block p/o 15831 & p/o 15833 | September 02, 2004 |
| SD/3-2 | Stormwater Drainage Computations - Block p/o 15831 & p/o 15833 | September 02, 2004 |
| SD/4-1 | Sewer Design - Block p/o 15833 & p/o 15834 | September 02, 2004 |
| SD/4-2 | Stormwater Drainage Computations - Block p/o 15833 & p/o 15834 | September 02, 2004 |
| SD/5-1 | Sewer Design - Block p/o 15834 & p/o 15836 | September 02, 2004 |
| SD/5-2 | Stormwater Drainage Computations - Block p/o 15834 & p/o 15836 | September 02, 2004 |
| SD/6-1 | Sewer Design - Block p/o 15836 & 15835 | September 02, 2004 |
| SD/6-2 | Stormwater Drainage Computations - Block p/o 15836 & 15835 | September 02, 2004 |

Grading

| | | |
|---|---|---|
| G-001 | Grading Plan | December 03, 2004 |
| G-002 | Grading Plan | December 03, 2004 |
| G-003 | Grading Plan | December 03, 2004 |

Utility

| | | |
|---|---|---|
| UC-001 | Utility Coordination | December 03, 2004 |
| UC-002 | Utility Coordination | December 03, 2004 |
| UC-003 | Utility Coordination | December 03, 2004 |

Borings

| | | |
|---|---|---|
| 03L748-57 | Subsurface investigation (1 of 5) | November 07, 2003 |
| 03L748-57 | Subsurface investigation (2 of 5) | November 07, 2003 |
| 03L748-57 | Subsurface investigation (3 of 5) | November 07, 2003 |
| 03L748-57 | Subsurface investigation (4 of 5) | November 07, 2003 |
| 03L748-57 | Subsurface investigation (5 of 5) | November 07, 2003 |

Survey

| | | |
|---|---|---|
| 66001 | Architectural Survey (1 of 6) | December 01, 2004 |
| 66001 | Architectural Survey (2 of 6) | December 01, 2004 |
| 66001 | Architectural Survey (3 of 6) | December 01, 2004 |
| 66001 | Architectural Survey (4 of 6) | December 01, 2004 |
| 66001 | Architectural Survey (5 of 6) | December 01, 2004 |
| 66001 | Architectural Survey (6 of 6) | December 01, 2004 |

TOTAL P.20

# ≡AIA® Document A401™ – 1997

## Standard Form of Agreement Between Contractor and Subcontractor

AGREEMENT made as of the Seventeenth day of July in the year Two Thousand and Four
*(In words, indicate day, month and year)*

BETWEEN the Contractor:
*(Name, address and other information)*

Monadnock Construction, Inc.
155-3rd Street
Brooklyn, New York 11231

and the Subcontractor:
*(Name, address and other information)*

Gateway Demolition Corp.
134-22 – 32nd Avenue
Flushing, New York, 11354

The Contractor has made a contract for construction dated:    TBD

With the Owner:
*(Name, address and other information)*

Edgemere by-the-Sea Corp.
155-3rd Street
Brooklyn, New York 11231

For the following Project:
*(Include detailed description of Project, location and address)*

Edgemere Phase B
Rockaway, Queens

which Contract is hereinafter referred to as the Prime Contract and which provides for the
furnishing of labor, materials, equipment and services in connection with the construction
of the Project. A copy of the Prime Contract, consisting of the Agreement Between Owner
and Contractor (from which compensation amounts may be deleted) and the other Contract
Documents enumerated therein has been made available to the Subcontractor.

The Architect for the Project is:
*(Name, address and other information)*

Gruzen Samton
320 West 13th Street
New York, New York 10014

The Contractor and the Subcontractor agree as follows.

This document has important
legal consequences.
Consultation with an attorney
is encouraged with respect to
its completion or modification.

This document has been
approved and endorsed by the
American Subcontractors
Association and the Associated
Specialty Contractors, Inc.


RECEIVED
JUL 1 9 2005
RECEIVED

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute
of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to
the maximum extent possible under the law. This document was produced by AIA software at 13:41:53 on 07/12/2004 under Order No.1000108438_1
which expires on 3/28/2005, and is not for resale.                                                                                   (3999571270)
User Notes:

AEC 00519

~~ARTICLE 1  THE SUBCONTRACT DOCUMENTS~~

### ARTICLE 1  THE SUBCONTRACT DOCUMENTS

§ 1.1 The Subcontract Documents consist of (1) this Agreement; ~~(2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the other Contract Documents enumerated therein; (3) Modifications issued subsequent to the execution of the Agreement between the Owner and Contractor, whether before or after the execution of this Agreement;~~ (4) other documents listed in Article 16 of this Agreement; and (5) Modifications to this Subcontract issued after execution of this Agreement. These form the Subcontract, and are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Subcontract Documents, other than Modifications issued subsequent to the execution of this Agreement, appears in Article 16.

§ 1.2 Except to the extent of a conflict with a specific term or condition contained in the Subcontract Documents, the General Conditions governing this Subcontract shall be the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

§ 1.3 The Subcontract may be amended or modified only by a Modification. The Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and the Subcontractor, (2) between the Owner and the Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor.

§ 1.4 The Subcontractor shall be furnished copies of the Subcontract Documents upon request, but the Contractor may charge the Subcontractor for the reasonable cost of reproduction.

### ARTICLE 2  MUTUAL RIGHTS AND RESPONSIBILITIES

§ 2.1 The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that the provisions of the edition of AIA Document A201 current as of the date of this Agreement apply to this Agreement pursuant to Section 1.2 and provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under such documents, assumes toward the Contractor, and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such documents, assumes toward the Owner and the Architect. The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract. Where a provision of such documents is inconsistent with a provision of this Agreement, this Agreement shall govern.

§ 2.2 The Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract by which the Subcontractor and the Sub-subcontractor are mutually bound, to the extent of the Work to be performed by the Sub-subcontractor, assuming toward each other all obligations and responsibilities which the Contractor and Subcontractor assume toward each other and having the benefit of all rights, remedies and redress each against the other which the Contractor and Subcontractor have by virtue of the provisions of this Agreement.

### ARTICLE 3  CONTRACTOR

§ 3.1 SERVICES PROVIDED BY THE CONTRACTOR

§ 3.1.1 The Contractor shall cooperate with the Subcontractor in scheduling and performing the Contractor's Work to avoid conflicts or interference in the Subcontractor's Work and shall expedite written responses to submittals made by the Subcontractor in accordance with Section 4.1 and Article 5. As soon as practicable after execution of this Agreement, the Contractor shall provide the Subcontractor copies of the Contractor's construction schedule and schedule of submittals, together with such additional scheduling details as will enable the Subcontractor to plan and perform the Subcontractor's Work properly. The Subcontractor shall be notified promptly of subsequent changes in the construction and submittal schedules and additional scheduling details.

§ 3.1.2 The Contractor shall provide suitable areas for storage of the Subcontractor's materials and equipment during the course of the Work. ~~Additional costs to the Subcontractor resulting from relocation of such facilities at the direction of the Contractor, except as previously agreed upon, shall be reimbursed by the Contractor.~~

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:41:53 on 07/12/2004 under Order No.1000108438_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                                                    (3882571276)

2

AEC 00520

§ 3.1.3 Except as provided in Article 14, the Contractor's equipment will be available to the Subcontractor only at the Contractor's discretion and on mutually satisfactory terms.

### § 3.2 COMMUNICATIONS
§ 3.2.1 The Contractor shall promptly make available to the Subcontractor information, including information received from the Owner, which affects this Subcontract and which becomes available to the Contractor subsequent to execution of this Subcontract.

§ 3.2.2 The Contractor shall not give instructions or orders directly to the Subcontractor's employees or to the Subcontractor's Sub-subcontractors or material suppliers unless such persons are designated as authorized representatives of the Subcontractor.

§ 3.2.3 The Contractor shall permit the Subcontractor to request directly from the Architect information regarding the percentages of completion and the amount certified on account of Work done by the Subcontractor.

§ 3.2.4 If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Contractor, a subcontractor or anyone directly or indirectly employed by them (other than the Subcontractor), the Contractor shall, prior to harmful exposure of the Subcontractor's employees to such substance, give written notice of the chemical composition thereof to the Subcontractor in sufficient detail and time to permit the Subcontractor's compliance with such laws.

§ 3.2.5 The Contractor shall furnish to the Subcontractor within 30 days after receipt of a written request, or earlier if so required by law, information necessary and relevant for the Subcontractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property, usually referred to as the site, on which the Project is located and the Owner's interest therein. To the degree such information is available to the Contractor.

§ 3.2.6 If the Contractor asserts or defends a claim against the Owner which relates to the Work of the Subcontractor, the Contractor shall make available to the Subcontractor information relating to that portion of the claim which relates to the Work of the Subcontractor.

### § 3.3 CLAIMS BY THE CONTRACTOR
§ 3.3.1 Liquidated damages for delay, if provided for in Section 9.3 of this Agreement, shall be assessed against the Subcontractor only to the extent caused by the Subcontractor or any person or entity for whose acts the Subcontractor may be liable, and in no case for delays or causes arising outside the scope of this Subcontract.

§ 3.3.2 The Contractor's claims for services or materials provided the Subcontractor shall require:
  .1    seven days' prior written notice except in an emergency;
  .2    written compilations to the Subcontractor of services and materials provided and charges for such services and materials no later than the fifteenth day of the following month.

### § 3.4 CONTRACTOR'S REMEDIES
§ 3.4.1 If the Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within three working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after three days following receipt by the Subcontractor of an additional written notice, and without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor.

### ARTICLE 4  SUBCONTRACTOR
### § 4.1 EXECUTION AND PROGRESS OF THE WORK
§ 4.1.1 The Subcontractor shall supervise and direct the Subcontractor's Work, and shall cooperate with the Contractor in scheduling and performing the Subcontractor's Work to avoid conflict, delay in or interference with the Work of the Contractor, other subcontractors or Owner's own forces.

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:41:53 on 07/12/2004 under Order No.1000108488_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                                                      (3999571276)

3

AEC 00521

**§ 4.1.2** The Subcontractor shall promptly submit Shop Drawings, Product Data, ~~Samples~~ Samples, ~~Mock-ups~~ and similar submittals required by the Subcontract Documents or the Contractor with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Contractor or other subcontractors.

**§ 4.1.3** The Subcontractor shall submit to the Contractor a schedule of values allocated to the various parts of the Work of this Subcontract, aggregating the Subcontract Sum, made out in such detail as the Contractor and Subcontractor may agree upon or as required by the ~~Owner,~~ Contractor and supported by such evidence as the Contractor may require. In applying for payment, the Subcontractor shall submit statements based upon this schedule.

**§ 4.1.4** The Subcontractor shall furnish to the Contractor periodic progress reports on the Work of this Subcontract as ~~mutually agreed,~~ required by the Contractor, including information on the status of materials and equipment which may be in the course of preparation, manufacture or transit.

**§ 4.1.5** The Subcontractor agrees that the Contractor and the Architect will each have the authority to reject Work of the Subcontractor which does not conform to the Prime Contract. The Architect's decisions on matters relating to aesthetic effect shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract.

**§ 4.1.6** The Subcontractor shall pay for all materials, equipment and labor used in connection with the performance of this Subcontract through the period covered by previous payments received from the Contractor, and shall furnish satisfactory evidence, when requested by the Contractor, to verify compliance with the above requirements.

**§ 4.1.7** The Subcontractor shall take necessary precautions to protect properly the Work of other subcontractors from damage caused by operations under this Subcontract.

**§ 4.1.8** The Subcontractor shall cooperate with the Contractor, other subcontractors and the Owner's own forces whose Work might interfere with the Subcontractor's Work. The Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion, if required by the Prime Contract, or the Contractor, specifically noting and advising the Contractor of potential conflicts between the Work of the Subcontractor and that of the Contractor, other subcontractors or the Owner's own forces.

### § 4.2 LAWS, PERMITS, FEES AND NOTICES
**§ 4.2.1** The Subcontractor shall give notices and comply with laws, ordinances, rules, regulations and orders of public authorities bearing on performance of the Work of this Subcontract. The Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Subcontractor's Work, the furnishing of which is required of the Contractor by the Prime Contract.

**§ 4.2.2** The Subcontractor shall comply with Federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts insofar as applicable to the performance of this Subcontract.

### § 4.3 SAFETY PRECAUTIONS AND PROCEDURES
**§ 4.3.1** The Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by the Contractor and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Prime Contract. The Subcontractor shall report to the Contractor within ~~three days~~ one day an injury to an employee or agent of the Subcontractor which occurred at the site.

**§ 4.3.2** If hazardous substances of a type of which an employer is required by law to notify its employees are being used on the site by the Subcontractor, the Subcontractor's Sub-subcontractors or anyone directly or indirectly employed by them, the Subcontractor shall, prior to harmful exposure of any employees on the site to such substance, give written notice of the chemical composition thereof to the Contractor in sufficient detail and time to permit compliance with such laws by the Contractor, other subcontractors and other employers on the site.

**§ 4.3.3** If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Subcontractor, the Subcontractor shall, upon recognizing the condition, immediately stop Work in

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:41:53 on 07/12/2004 under Order No.1000108438_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                                          (3999571276)

4

AEC 00522

the affected area and report the condition to the Contractor in writing. When the material or substance has been rendered harmless, the Subcontractor's Work in the affected area shall resume upon written agreement of the Contractor and Subcontractor. The Subcontract Time shall be extended appropriately and the Subcontract Sum shall be increased in the amount of the Subcontractor's reasonable additional costs of demobilization, delay and remobilization, which adjustments shall be accomplished as provided in Article 5 of this Agreement.

§ 4.3.4 To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Subcontractor, the Subcontractor's Sub-subcontractors, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 4.3.3 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

### § 4.4 CLEANING UP
§ 4.4.1 The Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. The Subcontractor shall not be held responsible for unclean conditions caused by other contractors or subcontractors.

§ 4.4.2 As provided under Section 3.3.2, if the Subcontractor fails to clean up as provided in the Subcontract Documents, the Contractor may charge the Subcontractor for the Subcontractor's appropriate share of cleanup costs.

### § 4.5 WARRANTY
§ 4.5.1 The Subcontractor warrants to the Owner, Architect and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the Work of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Subcontract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Subcontractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Subcontractor, improper or insufficient maintenance, improper operation, or normal wear and tear under normal usage. This warranty shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents.

### § 4.6 INDEMNIFICATION
§ 4.6.1 To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 4.6.

§ 4.6.2 In claims against any person or entity indemnified under this Section 4.6 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 4.6.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

### § 4.7 REMEDIES FOR NONPAYMENT
§ 4.7.1 If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within seven days from the time payment should be made as provided in this Agreement, the Subcontractor may, without prejudice to any other available remedies, upon seven additional days' written notice to the Contractor, stop the Work of this

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:41:53 on 07/12/2004 under Order No.1000108438_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                                        (3999571276)

AEC 00523

Subcontract until payment of the amount owing has been received. The Subcontract Sum shall, by appropriate adjustment, be increased by the amount of the Subcontractor's reasonable costs of demobilization, delay and remobilization.

## ARTICLE 5 CHANGES IN THE WORK

§ 5.1 The Owner may make changes in the Work by issuing Modifications to the Prime Contract. Upon receipt of such a Modification issued subsequent to the execution of the Subcontract Agreement, the Contractor shall promptly notify the Subcontractor of the Modification. Unless otherwise directed by the Contractor, the Subcontractor shall not thereafter order materials or perform Work which would be inconsistent with the changes made by the Modifications to the Prime Contract.

§ 5.2 The Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. The Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of a claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

§ 5.3 The Subcontractor shall make all claims promptly to the Contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which the Contractor is required to make under the Prime Contract within a specified time period or in a specified manner shall be made in sufficient time to permit the Contractor to satisfy the requirements of the Prime Contract. Such claims shall be received by the Contractor not less than two working days preceding the time by which the Contractor's claim must be made. Failure of the Subcontractor to make such a timely claim shall bind the Subcontractor to the same consequences as those to which the Contractor is bound.

## ARTICLE 6 MEDIATION AND ARBITRATION
### § 6.1 MEDIATION
§ 6.1.1 Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Section 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

§ 6.1.2 The parties shall endeavor to resolve their claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Subcontract and the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

§ 6.1.3 The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

### § 6.2 ARBITRATION
§ 6.2.1 Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Section 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 6.1.

§ 6.2.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. Demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association, and a copy shall be filed with the Architect.

§ 6.2.3 A demand for arbitration shall be made within the time limits specified in the conditions of the Prime Contract as applicable, and in other cases within a reasonable time after the claim has arisen, and in no event shall it

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:41:53 on 07/12/2004 under Order No.1000108438_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                                    (3999571276)

6

AEC 00524

be made after the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

**§ 6.2.4 Limitation on Consolidation or Joinder.** Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**§ 6.2.5 Claims and Timely Assertion of Claims.** The party filing a notice of demand for arbitration must assert in the demand all claims then known to that party on which arbitration is permitted to be demanded.

**§ 6.2.6 Judgment on Final Award.** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 7 TERMINATION, SUSPENSION OR ASSIGNMENT OF THE SUBCONTRACT
### § 7.1 TERMINATION BY THE SUBCONTRACTOR
**§ 7.1.1** The Subcontractor may terminate the Subcontract for the same reasons and under the same circumstances and procedures with respect to the Contractor as the Contractor may terminate, with respect to the Owner under the Prime Contract, or for nonpayment of amounts due under this Subcontract for 60 days or longer. In the event of such termination by the Subcontractor for any reason which is not the fault of the Subcontractor, Sub-subcontractors or their agents or employees or other persons performing portions of the Work under contract with the Subcontractor, the Subcontractor shall be entitled to recover from the Contractor payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

### § 7.2 TERMINATION BY THE CONTRACTOR
**§ 7.2.1** If the Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within ~~seven~~ **five** days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after ~~seven~~ **three** days following receipt by the Subcontractor of an additional written notice and without prejudice to any other remedy the Contractor may have, terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor may deem expedient. If the unpaid balance of the Subcontract Sum exceeds the expense of finishing the Subcontractor's Work and other damages incurred by the Contractor and not expressly waived, such excess shall be paid to the Subcontractor. If such expense and damages exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor.

**§ 7.2.2** If the Owner terminates the Contract for the Owner's convenience, the Contractor shall deliver written notice to the Subcontractor.

**§ 7.2.3** Upon receipt of written notice of termination, the Subcontractor shall:

.1    cease operations as directed by the Contractor in the notice;
.2    take actions necessary, or that the Contractor may direct, for the protection and preservation of the Work; and
.3    except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing Sub-subcontracts and purchase orders and enter into no further Sub-subcontracts and purchase orders.

**§ 7.2.4** In case of such termination for the Owner's convenience, the Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1983, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:41:53 on 07/12/2004 under Order No.1000108438_1 which expires on 3/28/2005, and is not for resale.
(3993571276)

7

AEC 00525

### § 7.3 SUSPENSION BY THE CONTRACTOR FOR CONVENIENCE

§ 7.3.1 The Contractor may, without cause, order the Subcontractor in writing to suspend, delay or interrupt the Work of this Subcontract in whole or in part for such period of time as the Contractor may determine. In the event of suspension ordered by the Contractor, the Subcontractor shall be entitled to an equitable adjustment of the Subcontract Time and Subcontract Sum.

§ 7.3.2 An adjustment shall be made for increases in the Subcontract Time and Subcontract Sum, including profit on the increased cost of performance, caused by suspension, delay or interruption. No adjustment shall be made to the extent:

    .1    that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Subcontractor is responsible;

    .2    that an equitable adjustment is made or denied under another provision of this Subcontract.

### § 7.4 ASSIGNMENT OF THE SUBCONTRACT

§ 7.4.1 In the event of termination of the Prime Contract by the Owner, the Contractor may assign this Subcontract to the Owner, with the Owner's agreement, subject to the provisions of the Prime Contract and to the prior rights of the surety, if any, obligated under bonds relating to the Prime Contract. In such event, the Owner shall assume the Contractor's rights and obligations under the Subcontract Documents. If the Work of the Prime Contract has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted.

§ 7.4.2 The Subcontractor shall not assign the Work of this Subcontract without the written consent of the Contractor, nor subcontract the whole of this Subcontract without the written consent of the Contractor, nor further subcontract portions of this Subcontract without written notification to the Contractor when such notification is requested by the Contractor.

### ARTICLE 8 THE WORK OF THIS SUBCONTRACT

§ 8.1 The Subcontractor shall execute the following portion of the Work described in the Subcontract Documents, including all labor, materials, equipment, services and other items required to complete such portion of the Work, except to the extent specifically indicated in the Subcontract Documents to be the responsibility of others.

See Rider 5, Scope of Work

*(Insert a precise description of the Work of this Subcontract, referring where appropriate to numbers of Drawings, sections of Specifications and pages of Addenda, Modifications and accepted Alternates.)*

### ARTICLE 9 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 9.1 The Subcontractor's date of commencement is the date from which the Contract Time of Section 9.3 is measured; it shall be the date of this Agreement, as first written above, unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Contractor.

*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

§ 9.2 Unless the date of commencement is established by a notice to proceed issued by the Contractor, or the Contractor has commenced visible Work at the site under the Prime Contract, the Subcontractor shall notify the Contractor in writing not less than five days before commencing the Subcontractor's Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

§ 9.3 The Work of this Subcontract shall be substantially completed not later than

*(Insert the calendar date or number of calendar days after the Subcontractor's date of commencement. Also insert any requirements for earlier Substantial Completion of certain portions of the Subcontractor's Work, if not stated elsewhere in the Subcontract Documents.)*

With all possible speed, Subcontractor will diligently perform the work, and maintain men in sufficient numbers and materials and equipment in sufficient quantities to accomplish the rapid completion of the job.

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:41:53 on 07/12/2004 under Order No.1000108438_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                                                      (3989571276)

8

AEC 00526

Portion of Work                                    Substantial Completion date

, subject to adjustments of this Subcontract Time as provided in the Subcontract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time.)*

§ 9.4 With respect to the obligations of both the Contractor and the Subcontractor, time is of the essence of this Subcontract.
§ 9.5 No extension of time will be valid without the Contractor's written consent after claim made by the Subcontractor in accordance with Section 5.3.

### ARTICLE 10  SUBCONTRACT SUM
§ 10.1 The Contractor shall pay the Subcontractor in current funds for performance of the Subcontract the Subcontract Sum of Fifty-nine Thousand Nine Hundred Sixty-nine Dollars and Zero Cents ($ $59,969.00 ), subject to additions and deductions as provided in the Subcontract Documents.

§ 10.2 The Subcontract Sum is based upon the following alternates, if any, which are described in the Subcontract Documents and have been accepted by the Owner and the Contractor:
*(Insert the numbers or other identification of accepted alternates.)*

See Rider 5, Scope of Work

§ 10.3 Unit prices, if any, are as follows:

| Description | Units | Price ($ 0.00) |
|---|---|---|
| Description See Rider 5, Scope of Work | | |

### ARTICLE 11  PROGRESS PAYMENTS
§ 11.1 Based upon applications for payment submitted to the Contractor by the Subcontractor, corresponding to applications for payment submitted by the Contractor to the Architect, and certificates for payment issued by the Architect, the Contractor shall make progress payments on account of the Subcontract Sum to the Subcontractor as provided below and elsewhere in the Subcontract Documents. Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor and Subcontractor for Work properly performed by their contractors and suppliers shall be held by the Contractor and Subcontractor for those contractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor or Subcontractor for which payment was made to the Contractor by the Owner or to the Subcontractor by the Contractor, as applicable. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor or Subcontractor, shall create any fiduciary liability or tort liability on the part of the Contractor or Subcontractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor or Subcontractor for breach of the requirements of this provision.

§ 11.2 The period covered by each application for payment shall be one calendar month ending on the last day of the month, or as follows:
Monthly cycle covered by each application shall be determined by Owner and Owner's lender.  Contractor shall notify Subcontractor of applicable dates.  Subcontractor's approved requisition submitted by the 20th day of the cycle, for work completed through the end of the prior cycle, less 10% retainage, will be paid within 3 working days of receipt of payment from Owner by Contractor. *OK 30 DAYS from date invoice is received by Contractor*

§ 11.3 Provided an application for payment is received by the Contractor not later than the 28th day of a month, the Contractor shall include the Subcontractor's Work covered by that application in the next application for payment which the Contractor is entitled to submit to the Architect. The Contractor shall pay the Subcontractor each progress payment within three working days after the Contractor receives payment from the Owner. If the Architect does not issue a certificate for payment or the Contractor does not receive payment for any cause which is not the

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 13:41:59 on 07/12/2004 under Order No. 1000108438_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                                  (3998571278)

9

fault of the Subcontractor, the Contractor shall pay the Subcontractor, on demand, a progress payment computed as provided in Sections 11.7, 11.8 and 11.9.

§ 11.4 If an application for payment is received by the Contractor after the application date fixed above, the Subcontractor's Work covered by it shall be included by the Contractor in the next application for payment submitted to the Architect.

§ 11.5 Each application for payment shall be based upon the most recent schedule of values submitted by the Subcontractor in accordance with the Subcontract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and be prepared in such form and supported by such data to substantiate its accuracy as the Contractor may require. This schedule, unless objected to by the Contractor, shall be used as a basis for reviewing the Subcontractor's applications for payment.

§ 11.6 Applications for payment submitted by the Subcontractor shall indicate the percentage of completion of each portion of the Subcontractor's Work as of the end of the period covered by the application for payment.

§ 11.7 Subject to the provisions of the Subcontract Documents, the amount of each progress payment shall be computed as follows:

§ 11.7.1 Take that portion of the Subcontract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Subcontractor's Work by the share of the total Subcontract Sum allocated to that portion of the Subcontractor's Work in the schedule of values, less that percentage actually retained, if any, from payments to the Contractor on account of the Work of the Subcontractor. Pending final determination of cost to the Contractor of changes in the Work which have been properly authorized by the Contractor, amounts not in dispute shall be included to the same extent provided in the Prime Contract, even though the Subcontract Sum has not yet been adjusted;

§ 11.7.2 Add that portion of the Subcontract Sum properly allocable to materials and equipment delivered and suitably stored at the site by the Subcontractor for subsequent incorporation in the Subcontractor's Work or, if approved by the Contractor, suitably stored off the site at a location agreed upon in writing, less the same percentage retainage required by the Prime Contract to be applied to such materials and equipment in the Contractor's application for payment;

§ 11.7.3 Subtract the aggregate of previous payments made by the Contractor; and

§ 11.7.4 Subtract amounts, if any, calculated under Section 11.7.1 or 11.7.2 which are related to Work of the Subcontractor for which the Architect has withheld or nullified, in whole or in part, a certificate of payment for a cause which is the fault of the Subcontractor.

§ 11.8 Upon the partial or entire disapproval by the Contractor of the Subcontractor's application for payment, the Contractor shall provide written notice to the Subcontractor. When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld.

§ 11.9 SUBSTANTIAL COMPLETION
§ 11.9.1 When the Subcontractor's Work or a designated portion thereof is substantially complete and in accordance with the requirements of the Prime Contract, the Contractor shall, upon application by the Subcontractor, make prompt application for payment for such Work. Within 30 days following issuance by the Architect of the certificate for payment covering such substantially completed Work, the Contractor shall, to the full extent allowed in the Prime Contract, make payment to the Subcontractor, deducting any portion of the funds for the Subcontractor's Work withheld in accordance with the certificate to cover costs of items to be completed or corrected by the Subcontractor. Such payment to the Subcontractor shall be the entire unpaid balance of the Subcontract Sum if a full release of retainage is allowed under the Prime Contract for the Subcontractor's Work prior to the completion of the entire Project. If the Prime Contract does not allow for a full release of retainage, then such payment shall be an amount which, when added to previous payments to the Subcontractor, will reduce the retainage on the Subcontractor's substantially completed Work to the same percentage of retainage as that on the Contractor's Work covered by the certificate.

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:41:53 on 07/12/2004 under Order No.1000108438_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                                      (3998571276)

**10**

AEC 00528

## ARTICLE 12  FINAL PAYMENT

§ 12.1 Final payment, constituting the entire unpaid balance of the Subcontract Sum, shall be made by the Contractor to the Subcontractor when the Subcontractor's Work is fully performed in accordance with the requirements of the Subcontract Documents, the Architect has issued a certificate for payment covering the Subcontractor's completed Work and the Contractor has received payment from the Owner. ~~If, for any cause which is not the fault of the Subcontractor, a certificate for payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the Owner, final payment to the Subcontractor shall be made upon demand.~~ *Final payment will be made after all work is completed and Subcontractor submits DOB signoff printout. WZ includes all retainage*

*(Insert provisions for earlier final payment to the Subcontractor, if applicable.)*

§ 12.2 Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

## ARTICLE 13  INSURANCE AND BONDS

§ 13.1 The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

~~Type of insurance~~                    ~~Limits of liability ($ 0.00)~~

**See Rider 3, Insurance**

§ 13.2 Coverages, ~~whether written on an occurrence or claims-made basis,~~ shall be maintained without interruption from date of commencement of the Subcontractor's Work until date of final payment and termination of any coverage required to be maintained after final payment to the Subcontractor. **All insurance except Completed Operations must be on an occurrence basis.**

§ 13.3 Certificates of insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the Subcontractor's Work. These certificates and the insurance policies required by this Article 13 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required in Article 12. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.

§ 13.4 The Contractor shall furnish to the Subcontractor satisfactory evidence of insurance required of the Contractor under the Prime Contract.

§ 13.5 The Contractor shall promptly, upon request of the Subcontractor, furnish a copy or permit a copy to be made of any bond covering payment of obligations arising under the Subcontract.

§ 13.6 Performance Bond and Payment Bond:
*(If the Subcontractor is to furnish bonds, insert the specific requirements here.)*

| Bond type | Bond amount 00) | Bond delivery date | Bond form |
|---|---|---|---|
| ~~Bond type~~ | ~~Bond amount ($ 0.00)~~ | ~~Bond delivery date~~ | ~~Bond form~~ |
| None | | | |

~~§ 13.7 PROPERTY INSURANCE~~
~~§ 13.7.1 When requested in writing, the Contractor shall provide the Subcontractor with copies of the property and equipment policies in effect for the Project. The Contractor shall notify the Subcontractor if the required property insurance policies are not in effect.~~

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:41:53 on 07/12/2004 under Order No.1000108438_1 which expires on 3/28/2005, and is not for resale.
User Notes:    (3999571276)

**11**

AEC 00529

§ 13.7.2 If the required property insurance is not in effect for the full value of the Subcontractor's Work, then the Subcontractor shall purchase insurance for the value of the Subcontractor's Work, and the Subcontractor shall be reimbursed for the cost of the insurance by an adjustment in the Subcontract Sum.

§ 13.7.3 Property insurance for the Subcontractor's materials and equipment required for the Subcontractor's Work, stored off site or in transit and not covered by the Project property insurance, shall be paid for through the application for payment process.

## § 13.8 WAIVERS OF SUBROGATION

§ 13.8.1 The Contractor and Subcontractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance provided under the Prime Contract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner as a fiduciary. The Subcontractor shall require of the Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

## ARTICLE 14  TEMPORARY FACILITIES AND WORKING CONDITIONS

§ 14.1 The Contractor shall furnish and make available to the Subcontractor the following temporary facilities, equipment and services; these shall be furnished at no cost to the Subcontractor unless otherwise indicated below:

Temporary Facility, Equipment or Service                Cost, if any ($ 0.00)

See Rider 1, Conditions

§ 14.2 Specific working conditions:
*(Insert any applicable arrangements concerning working conditions and labor matters for the Project.)*

See Rider 1, Conditions

## ARTICLE 15  MISCELLANEOUS PROVISIONS

§ 15.1 Where reference is made in this Subcontract to a provision of another Subcontract Document, the reference refers to that provision as amended or supplemented by other provisions of the Subcontract Documents.

§ 15.2 Payments due and unpaid under this Subcontract shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

None

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's, Contractor's and Subcontractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

§ 15.3 Retainage and any reduction thereto is as follows:

Retainage to be 10%. Retainage shall be reduced by the Contractor to the Subcontractor to the extent and as it is reduced by the Owner to the Contractor.

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:41:53 on 07/12/2004 under Order No.1000108438_1 which expires on 3/28/2005, and is not for resale.
User Notes:                                                                                         (3699571276)

AEC 00530

§ 15.4 The Contractor and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Subcontract, including without limitation, any consequential damages due to either party's termination in accordance with Article 7.

**ARTICLE 16  ENUMERATION OF SUBCONTRACT DOCUMENTS**
§ 16.1 The Subcontract Documents, except for Modifications issued after execution of this Subcontract, are enumerated as follows:

§ 16.1.1 This executed 1997 edition of the Standard Form of Agreement Between Contractor and Subcontractor, AIA Document A401-1997;

§ 16.1.2 The Prime Contract, consisting of the Agreement between the Owner and Contractor dated as first entered above and the other Contract Documents enumerated in the Owner-Contractor Agreement;

§ 16.1.3 The following Modifications to the Prime Contract, if any, issued subsequent to the execution of the Owner-Contractor Agreement but prior to the execution of this Agreement:

| Modification | Date |
| --- | --- |
| See Rider 4, Contract Documents | |

§ 16.1.4 Other Documents, if any, forming part of the Subcontract Documents are as follows:
*(List any additional documents that are intended to form part of the Subcontract Documents. Requests for proposal and the Subcontractor's bid or proposal should be listed here only if intended to be part of the Subcontract Documents.)*

Rider 1, Conditions
Rider 2, Monadnock Subcontractor Safety Disciplinary Program
Rider 3, Insurance
Rider 4, Contract Documents
Rider 5, Scope of Work

This Agreement entered into as of the day and year first written above.

CONTRACTOR *(Signature)*                   SUBCONTRACTOR *(Signature)*
Jens Peter Haagen, Vice President          Michael Luhman, Vice President
*(Printed name and title)*                 *(Printed name and title)*

AIA Document A401™ – 1997. Copyright © 1915, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1972, 1978, 1987 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:41:53 on 07/12/2004 under Order No.1000106458_1 which expires on 3/28/2005, and is not for resale.
User Notes:    (3989571276)

13

AEC 00531

Monadnock Construction, Inc.
### Subcontract Rider 1, Conditions
Notwithstanding anything to the contrary contained in the Subcontract,
the following terms and conditions apply:

### Article 3, Services Provided by the Contractor
A.  Monadnock shall provide temporary power, light, and water.
B.  Subcontractor shall provide portable generators if required due to the lack of
    electrical services at the time of the work.
C.  If there is an interruption to any site services provided by Monadnock there shall be
    no extensions of time, unless such interruption lasts more than one day and
    substantially effects the work of the Subcontractor.  There shall be no extra costs paid
    for walk-up time that may be incurred as a result of vertical transportation
    breakdown, if such is provided by Monadnock.  The Subcontractor and its employees
    shall continue to work and walk to the place of the work, if necessary, during any
    breakdown.
D.  Subcontractor's shanties, if any, shall be of fireproof construction and shall be placed
    and relocated when and where directed by Monadnock.  Light and power for such
    shanties shall be the responsibility of this Subcontractor.

### Article 4.1, Execution and Progress of the Work
A.  Subcontractor has visited the site and accepts all conditions "as-is" including but not
    limited to buildings, properties, streets, sidewalks, etc.
B.  Subcontractor shall maintain the construction schedule as established by Monadnock,
    and shall properly staff the project to keep up with job progress.  Time is of the
    essence, and, in the event overtime or other costs are required to keep abreast of the
    construction schedule, it shall be performed at no additional cost to Monadnock.
C.  Subcontractor shall perform work when and as directed by Monadnock.  Monadnock
    may require Subcontractor to perform work on any area at different times and/or
    intervals including portions out of sequence, to temporarily omit a portion of the work
    and later fill in such portions when directed.  Out of sequence and comeback work
    shall be at no additional cost to Monadnock.
D.  Subcontractor shall provide all proper supervision, including management,
    engineering, expediting and field operations.  Subcontractor's work shall be
    performed by qualified mechanics and supervised by qualified foremen.
E.  Subcontractor shall coordinate all deliveries to the site with Monadnock, and shall
    provide all necessary equipment and personnel for expeditious unloading, storage,
    distribution and protection.  Subcontractor shall provide flagmen or other personnel
    necessary to maintain traffic and safeguard the public.
F.  Subcontractor shall adequately protect all material and store as directed by the
    Contractor.



Subcontract Rider 1, Conditions, Page 1 of 3

AEC 00532

G. Subcontractor's work shall be performed by union labor, and by trades having jurisdiction. Should questions of union jurisdiction arise the subcontractor shall immediately take measures to settle any disputes and shall employ such labor as may be determined to have jurisdiction, without additional cost. Shall Subcontractor fail to take expeditious action, the Subcontractor shall be responsible to Monadnock for any time lost and costs incurred.

H. Subcontractor shall leave debris in one pile on each floor. Monadnock shall provide carting for debris.

I. Subcontractor acknowledges and recognizes community labor factors, and agrees to provide harmony with same.

### Article 4.2, Laws, Permits, Fees and Notices

Subcontractor shall provide necessary coordination, testing, inspections by and for, and permits and signoffs from any governmental agencies, utilities, etc. with jurisdiction over its trade, including Department of Buildings filings and signoffs. Subcontractor shall cooperate fully with any testing and inspection agency retained by the Owner or Monadnock, including performing any remedial work recommended by the inspector.

### Article 4.3, Safety Precautions and Procedures.

A. Subcontractor shall cooperate with and abide by the Monadnock Subcontractor Safety Disciplinary Program.

B. Any safety concerns brought to the Subcontractor's attention by Monadnock shall be corrected immediately. If Subcontractor does not take corrective action within the time required by Monadnock, Monadnock may remedy the situation at Subcontractor's expense.

C. Subcontractor shall submit copies of their Safety and Hazard Communication Programs along with all appropriate Material Safety Data Sheets to Monadnock prior to start of work. Subcontractor shall notify Contractor of any hazardous material it intends to use on the job.

D. This is a Hard Hat job. All Subcontractor's personnel on site shall wear hard hats at all times.

E. Subcontractor shall hold Toolbox Safety Meetings for its workers on a regular basis, and provide record of such meetings to Monadnock.

F. Subcontractor shall provide in-line GFCI's for all power tools and equipment used by Subcontractor's personnel, and shall properly maintain all power tools and extension cords used by Subcontractor's personnel.

G. Subcontractor shall immediately properly reinstall or repair as required any protection which it removes or causes to be removed for its work or other reasons, or bear the cost of such reinstallation or repair.

H. Alcohol, drugs and weapons will not be allowed on the site, and shall be cause for immediate expulsion from the site by Monadnock.

### Article 4.4, Cleaning Up

Subcontractor shall leave its debris in one pile on each floor. Monadnock shall provide carting for debris removal.



Subcontract Rider 1, Conditions, Page 2 of 3

AEC 00533

### Article 4.5, Warranty

The Subcontractor agrees to guarantee to the Owner and Monadnock all work covered by this agreement, to run for a period of one (1) year from the date of initial occupancy, and shall furnish all material, labor, and equipment required during this period to correct defects or errors in the work, material, and equipment without charge. For all mechanical work (plumbing, heating, sprinkler, electrical, ventilation and air conditioning) this guaranty shall be for two years.

### Article 5, Changes in the Work

A. Any change shall be approved by Monadnock prior to performing the work, including any authorization for time-and-materials work. Any extra work performed without prior approval will not be reimbursed.

B. Subcontractor shall have any work tickets signed by Monadnock's Superintendent on the same day the work is performed, with a copy for Monadnock's records. This signature is limited to confirming that work was done and/or verifying time and materials expended. The actual determination that such work is a change to the Subcontract shall be established by Monadnock's Project Manager.

C. Subcontractor shall present an invoice for any change, including T&M work, within thirty (30) days. After thirty (30) days, all claims for change will be rejected.

D. In the event Contract Documents are revised, Subcontractor shall notify Monadnock of any proposed change to Subcontract price within 15 calendar days from receipt of said documents. If such notice is not made within this time period, then the revised documents shall become part of this Subcontract with no change in Subcontract Price.

### Article 8, The Work of This Subcontract.

A. Subcontractor includes all work or materials that may be reasonably inferred and needed to make its work complete or that may be required by local code or good construction practice including but not limited to any necessary equipment, hoisting, scaffold, bracing, shoring, cutting, chopping or other work.

B. Subcontractor shall perform all layout required for the installation of its work. Base lines and benchmarks shall be provided by Monadnock.

C. Subcontractor shall pay all applicable sales and use taxes.

D. Cost of Master Mechanic, if required, shall be prorated among all Subcontractors on the job who contribute to the requirement of a Master Mechanic by the number of Operating Engineers each Subcontractor employs. The Master Mechanic shall be employed by the Subcontractor employing the most Operating Engineers on the job, or if an equal number of Operating Engineers are employed by more than one Subcontractor then by the last Subcontractor on the job whose operations require a Master Mechanic. Contractor shall reimburse employing Subcontractor and deduct appropriate sums from the payments to contributing Subcontractors.

E. Cost of overtime for Teamster Foreman, Operating Engineers, Elevator Mechanics, Electricians, Plumbers, Laborers, or any other necessary standby trades caused by Subcontractor's deliveries, unloading, or work operations required to maintain the schedule shall be charged to Subcontractor. If such overtime is required by the Contractor to accelerate the schedule, the cost of the overtime shall be borne by the Contractor.



Subcontract Rider 1, Conditions, Page 3 of 3

AEC 00534

# MONADNOCK
## CONSTRUCTION, INC.

# Subcontractor Safety Disciplinary Program

Monadnock Construction, Inc. is committed to maintaining a safe and accident-free workplace. Monadnock's commitment is not enough, however. Obtaining this goal requires the same commitment by Monadnock's Subcontractors and their employees. To promote this goal, Monadnock maintains a Subcontractor Safety Disciplinary Program.

The Subcontractor Safety Disciplinary Program (SSDP) involves Monadnock and all Monadnock Subcontractors and is in effect on all jobs. **The SSDP program operates as follows:**

This SSDP is included as part of Monadnock's subcontract. At the pre-job meeting an explanation of the program will be presented and time will be made available to answer any questions. Prior to the start of any work, Monadnock's field Superintendent will review the requirements of the SSDP with the Subcontractor's Foreman. The SSDP is a disciplinary program structured to ensure all Subcontractors on site understand and carry out their job site safety responsibilities.

All Monadnock job sites will be inspected on a regular basis by Monadnock and/or GBC Safety Services personnel. Any safety violations will be presented in writing to the Subcontractor Foreman and sent by fax to the Subcontractor's office. The Subcontractor can be cited <u>at any time</u> by Monadnock's Field Superintendent, Safety Inspector, Project Manager, or Executives.

In cases of serious, high hazard violations the Subcontractor will be instructed to stop the work involved immediately. For low hazard violations the Subcontractor will be given the opportunity to correct the violation in a reasonable amount of time, as determined by Monadnock personnel.

<u>Note:</u> At times, Monadnock's Subcontractors may subcontract a portion of their work. Monadnock's Subcontractor will be responsible for informing their subcontractors of the SSDP and insuring that they comply with all obligations. Any warnings, violations, or fines incurred by the Subcontractor's subcontractor will be written to Monadnock's Subcontractor and considered a failure on their part to comply with the SSDP.

For the purposes of this program, a low hazard violation will be defined as one that would be considered an "Other-Than-Serious" violation by OSHA. A high hazard violation will be one that is considered a "Serious", "Willful" or "Criminal/Willful" violation by OSHA. See attached excerpts from the OSHA inspector's guide for definitions of each of these classifications.



Subcontract Rider 2, Monadnock SSDP, Page 1 of 4

AEC 00535

Each job site will be considered as a separate entity with its own Subcontractor Safety Disciplinary Program. All safety violations will be subject to a five step penalty process. These steps shall be as follows:

1. **Warning.** The Subcontractor and the Subcontractor's Foreman will be given a written warning of any low hazard safety violation. Action should be taken by the Subcontractor to remove the violation as soon as possible. It will be up to Monadnock's Superintendent to determine how much time will be allowed for correction. (Note: No Warnings will be given for high hazard safety violations. High hazard violations will result in an automatic First Violation - see Step 2 below).

2. **First Violation.** If the Subcontractor and/or his personnel fail, in a timely manner, to correct a low hazard safety violation that has resulted in a warning (Step 1 above), the Subcontractor will receive a First Violation. Fines for each First Violation will be $100. Any high hazard violation will result in an automatic First Violation - no Warning will be given - and the Subcontractor will be fined $200 for each one received.

3. **Second Violation.** If the Subcontractor and/or his personnel are cited for a Second Violation for the same low hazard safety violation, the Subcontractor will be fined $200. Fines for high hazard, Second Violations will be $400. If it is the same worker that has been cited each time, the worker may be removed from the job.

4. **Third Violation.** If the Subcontractor and/or his personnel are cited for a Third Violation for either a low or high hazard violation, the Subcontractor will receive written notice that they are excluded for one year from performing any other work for Monadnock Construction. If it is the same worker who has been cited each time, he/she must now be removed from the job. (Note: A Third Violation will also serve as written notice to commence and continue correction of such default with diligence and promptness, as per Article 7.2 of the subcontract.)

5. **Fourth Violation.** Any Subcontractor who receives a Fourth Violation will be removed from the job. (Note: A Fourth Violation will serve as additional written notice to the Subcontractor, and three days after receipt by the Subcontractor, the subcontract shall be terminated, as per Article 7.2 of the subcontract.)

In addition to any fines received as a result of any violation, the Subcontractor shall be responsible for the proper replacement of any protection removed, disassembled, or destroyed by his/her workers. If the Subcontractor restores the protection, it shall be restored to proper condition, with the proper materials. If the Subcontractor does not restore the protection to the proper condition, he/she will be responsible for the cost of all material, labor and equipment required to restore the protection to proper condition.



Subcontract Rider 2, Monadnock SSDP, Page 2 of 4

AEC 00536

At the end of the project, all fines collected during the course of the job will be donated to a charity or charities as determined by Monadnock Construction from a list of possible charities agreed to between Monadnock and the Subcontractor. Fines will be paid within 30 days of their occurrence. In the event fines are not paid in a timely fashion, the fine will be back charged against the Subcontractor by Monadnock Construction, Inc., who will in turn credit the charity account with the funds.

A sample of possible safety violations are listed below. These are not all-inclusive and the Subcontractor shall understand that they can be cited for other safety violations not listed here:

1. An employee's failure to wear a hard hat in all construction areas.
2. An employee's failure to wear safety glasses or other appropriate eye and face protection when machines or operations present potential eye or face injury from physical, chemical, or radiation agents.
3. Removal by Subcontractor of cables, barricades, railings or other safety related items in order to perform their work, and failure to properly replace them each time they leave the area and when their work is completed.
4. For each floor opening cover removed and left unattended or not replaced at the end of that operation. A warning will also be issued against any Subcontractor creating a floor hole and failing to protect it.
5. For each incident where an employee is using a 120 volt, single-phase, 15- or 20-amp power tool on temporary power without Ground Fault Circuit Interrupter protection. An exception exists where an adequate assured equipment grounding conductor program is in place.
6. For each incident where a temporary or permanent electrical cabinet operating at greater than 50 volts is unprotected, exposing site personnel to contact with live parts. Note: A cardboard cover will not be considered adequate protection for a live panel box.
7. For each excavation which is not sloped, benched, or shored in conformance with OSHA standards, OSHA regulation 1926, Subpart P.
8. For each employee working at elevations greater than 6 feet without proper fall protection. (Excluding structural steel erection and work on ladders and scaffolds.)
9. For failure to construct, use, or modify any scaffold system in accordance with OSHA regulation 1926.451.
11. For failure to use and install a ladder in accordance with OSHA regulation 1926.1053.
12. For failure to work in accordance with the fall protection requirements outlined in OSHA 1926 Subpart R for structural steel erection activities.
13. 13. For compressed gas cylinders not stored in accordance with OSHA regulation 1926.350.

These are only some specific instances that are subject to the five step penalty process. All Subcontractors must continue to abide by all federal, state, and local laws that apply to this project regardless of their inclusion in this program.



Subcontract Rider 2, Monadnock SSDP, Page 3 of 4

AEC 00537

*Excerpts of Violation Types From OSHA Inspector's Guide*

**A.   Other-Than-Serious Violations.**
*This type of violation shall be cited in situations where the most serious injury or illness that would be likely to result from a hazardous condition cannot reasonably be predicted to cause death or serious physical harm to exposed employees but does have a direct and immediate relationship to their safety and health.*

**B.   Serious Violations.**
(1)   *Section 17(k) of the Act provides "... a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."*
(2)   *The CSHO shall consider four elements to determine if a violation is serious.*
  (a)   *Step 1.  The types of accident or health hazard exposure which the violated standard or the general duty clause is designed to prevent.*
  (b)   *Step 2.  The most serious injury or illness which could reasonably be expected to result from the type of accident or health hazard exposure identified in Step 1.*
  (c)   *Step 3.  Whether the results of the injury or illness identified in Step 2 could include death or serious physical harm.  Serious physical harm is defined as:*
    1.   *Impairment of the body in which part of the body is made functionally useless or is substantially reduced in efficiency on or off the job.  Such impairment may be permanent or temporary, chronic or acute.  Injuries involving such impairment would usually require treatment by a medical doctor.*
    2.   *Illnesses that could shorten life or significantly reduce physical or mental efficiency by inhibiting the normal function of a part of the body.*
  (d) *Step 4.  Whether the employer knew, or with the exercise of reasonable diligence, could have known of the presence of the hazardous condition.*
    1.   *In this regard, the supervisor represents the employer and a supervisor's knowledge of the hazardous condition amounts to employer knowledge.*
    2.   *In cases where the employer may contend that the supervisor's own conduct constitutes an isolated event of employee misconduct, the CSHO shall attempt to determine the extent to which the supervisor was trained and supervised so as to prevent such conduct, and how the employer enforces the rule.*
    3.   *If, after reasonable attempts to do so, it cannot be determined that the employer has actual knowledge of the hazardous condition, the knowledge requirement is met if the CSHO is satisfied that the employer could have known through the exercise of reasonable diligence.  As a general rule, if the CSHO was able to discover a hazardous condition, and the condition was not transitory in nature, it can be presumed that the employer could have discovered the same condition through the exercise of reasonable diligence.*

**D.   Willful Violations.**
*The following definitions and procedures apply whenever the CSHO suspects that a willful violation may exist:*
(1)   *A willful violation exists under the Act where the evidence shows either an intentional violation of the Act or plain indifference to its requirements.*
  (a) *The employer committed an intentional and knowing violation if:*
    1.   *The employer representative was aware of the requirements of the Act, or the existence of an applicable standard or regulation, and was also aware of a condition or practice in violation of those requirements, and did not abate the hazard.*
    2.   *An employer representative was not aware of the requirements of the Act or standards, but was aware of a comparable legal requirement (e.g., state or local law) and was also aware of a condition or practice in violation of that requirement, and did not abate the hazard.*

**E.   Criminal/Willful Violations.**
*Section 17(e) of the Act provides that:  "Any employer who willfully violates any standard, rule or order promulgated pursuant to Section 6 of this Act, or of any regulations prescribed pursuant to this Act, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by both; except that if the conviction is for a violation committed after a first conviction of such person, punishment shall be a fine of not more than $20,000 or by imprisonment for not more than one year, or by both."*



Subcontract Rider 2, Monadnock SSDP, Page 4 of 4

AEC 00538

**Monadnock Construction, Inc.**
### Subcontract Rider 3, Insurance for Non CCIP Subcontractors
Notwithstanding anything to the contrary contained in the Subcontract,
the following terms and conditions apply for all Subcontractors that are not enrolled into
the Monadnock Contractor Controlled Insurance Program:

Prior to commencement of work, the Subcontractor shall furnish Insurance Certificates to
Monadnock Construction, Inc. All certificates and policies, except Worker's
Compensation, must name the following as Additional Insured:

- Monadnock Construction, Inc.
- Edgemere by-the-Sea Corp.
- Hudson Residential Services, Inc.
- Hudson Companies, Inc.
- NYC Partnership HDFC, Inc.
- City of New York Department of HPD

*[handwritten: ✱ SEE SAmple CerT. as per Peter + Mike Discussion ✱]*

No work shall be started by Subcontractor and no payment will be made by Monadnock
until all Insurance Certificates are provided to Monadnock and approved by Monadnock
and/or their insurance representatives.

*[handwritten: 3 MiL GROSS]*

Requirements:
1. Disability Benefits Insurance as required by law.
2. Worker's Compensation Insurance as required by law.
3. $2,000,000 combined single limit Comprehensive General Liability Policy to cover
   bodily injury to persons other than employees, property damage and loss of use
   thereof, including:
   a. All premises and operations
   b. Explosion, collapse and underground damage
   c. Contractor's Protective coverage for Independent Subcontractors or
      Sub-subcontractor.
   d. Contractual Liability for the obligation assumed in the indemnification or hold
      harmless agreement.
   e. Personal injury liability endorsement with no exclusions pertaining to
      employment or contractual liability.
   f. Products and completed operations. Coverage to extend throughout the contract
      guarantee period.
   g. Employees as additional insureds.
   h. Broad form property damage liability.
   i. Cross Liability.
4. $1,000,000 combined single limit Comprehensive Automobile Liability Policy to
   cover bodily injury and property damage arising out of the ownership, maintenance or
   use of any motor vehicle, including owned, non-owned and hired vehicles.



Subcontract Rider 3, Insurance, Page 1 of 2

AEC 00539

5. $5,000,000 Commercial Umbrella Liability Policy . Umbrella or excess policy shall be at least as broad as the primary or underlying policy/ies and shall apply to the Subcontractor's general liability and automobile liability insurance.  If umbrellas are written in more than one company, any layers above the first one shall follow the form of the primary umbrella.

The Subcontractor agrees to defend, indemnify and hold harmless, Monadnock Construction, Inc., the Owner, other Additional Insureds, and their respective shareholders, officers, directors, agents, partners and employees against any and all liability, cost damage, injury and expenses, including but not limited to legal fees, in any way relating to the performance of this Subcontract, provided that such liability is not due to the sole, affirmative negligent acts of themselves.

Any contractors employed on the project by Subcontractor ("sub-subcontractors") are subject to all terms and requirements.



Edgemere                                                    June 18, 2004
Job # 2420

## RIDER 2: SCOPE OF WORK

**June 18, 2004**

**Edgemere**

TRADE:  **Demolition**

AS PER PLANS AND SPECS, INCLUDING BUT NOT LIMITED TO:

Furnish all labor, materials, tools and equipment required to perform the work in this section as shown on the contract documents and as specified herein.  In general, the work shall include all demolition and selective demolition required in order for new construction to proceed and as specified below:

1. Follow all NYC and OSHA safety guidelines as may be required to perform the demolition work. All DOB and DOT filings and permits required for the work of this scope are to be included.  All notifications to adjacent property owner's as required by NYC codes.  Buildings to be demolished are 40-11 Beach Channel Drive, 40-12 Rockaway Beach Blvd., and 327 Beach 40th St.

2. Erect a 4 foot high plywood barricade during the scope of this contract.

3. Exterminate all properties as required and receive NYC Board of Health signoff.

4. Perform all required utility disconnects, including but not limited to electric, sewer, gas, water, telephone, cable television, etc as required for the demolition of the buildings and to maintain continuous service to all adjacent buildings and facilities.  The Subcontractor shall contact, make arrangements, and coordinate all utility disconnects prior to the execution of this contract.

5. This Subcontractor shall receive a copy of the ACP-5's for all three buildings. There is no asbestos in the buildings.

6. This Subcontractor will perform the complete demolition and removal of three buildings as noted above.  Price includes demolition by mechanical means and includes all paperwork required for mechanical requests.

7. This Subcontractor will provide all equipment, materials and labor to demolish and remove all of the above ground and below ground structures.  Foundation walls below the final grade are to remain. Cellar slabs are to be broken for drainage. All material not crushed concrete or masonry is deemed not suited for backfill and shall be removed and properly disposed of by this Subcontractor.  If



Rider 2: Scope of Work – Demolition   Page 1 of 4

AEC 00541

Edgemere                                                    June 18, 2004
Job # 2420

required, this subcontractor shall import clean fill to create a safe condition at any
basements at no additional cost.

8. This Subcontractor will take all precautions required to protect the adjacent
   building from any damages, including the undermining of footings, as a result of
   demolition operations. If there is any damage to the adjacent structures as a result
   of the demolition it will be the responsibility of this subcontractor to complete all
   repairs. Should Monadnock be required to make repairs or replacements for
   damage done under this contract, Monadnock reserves the right to back-charge
   accordingly.

9. This Subcontractor is responsible for providing any temporary facilities including
   shanties, portable toilets, water, and electric required for his work.

10. This Subcontractor shall provide adequate protection throughout all operations for
    adjoining roadways, and curbs that are to remain. All roadways and curbs are to
    be left in original condition. Any damaged sidewalks shall be repaired with 2"
    rolled blacktop.

11. The Subcontractor shall provide adequate protection of all adjoining utility lines,
    including but not limited to water, sewer, gas, steam, and telecommunications.

12. The Subcontractor shall provide all dust and noise controls and abide to all local
    laws and ordinances. The Subcontractor shall also provide and maintain all
    protection to adjacent buildings as required.

13. The Subcontractor shall provide all signage prior to the commencement of work,
    including project signs, and any required New York City Department of Buildings
    signage. The subcontractor shall also provide all traffic and pedestrian signage as
    required by the New York City Department of Transportation prior to
    commencement of demolition, as well as any required barricades, temporary
    lighting, markers, line striping, etc. The subcontractor shall provide any
    personnel required to redirect pedestrian and vehicular traffic during the execution
    of this contract.

14. Under no circumstance shall the Subcontractor truck in and drop off material for
    storage, backfill, or any reason except for clean fill noted in Item 7 above..

15. The Owner and Monadnock are not providing security for the site overnight. The
    subcontractor shall leave the site fence safe and secure at the end of the working
    day. The subcontractor shall take all responsibility for tools and/or equipment left
    on site during non- and working hours. Monadnock, the Owner and their
    representatives shall not be held responsible for damage or loss of any equipment
    during the course of this contract.



Rider 2: Scope of Work – Demolition   Page 2 of 4

Edgemere                                          June 18, 2004
Job # 2420

16. The Subcontractor will be responsible for any overtime charges incurred by the
    Monadnock for required inspection services or monitoring should the
    Subcontractor work past the standard workday.

17. The Subcontractor shall provide evidence that all applications and permits with
    the New York City Department of Buildings have been closed upon completion of
    work.

18. The Subcontractor shall provide all forms, permits, issuances required under this
    scope of work, including but not limited to demolition permits, and any
    certificates for adequate disposal that are required to subsequently acquire a new
    building permit, at no additional cost to Monadnock. Any inspections, re-
    inspections, or other requirements that are or may become required for the
    successful completion of this contract shall be provided by this Subcontractor at
    no additional cost.

19. Safety requirements:
    • This subcontractor shall cooperate with and abide to all applicable safety
      regulations, including but not limited to OSHA regulations and New York
      City Building Department requirements through the course of this contract.
    • The Subcontractor will abide by the terms of Monadnock's Contractor
      Controlled Insurance Program (CCIP).
    • Any safety concerns brought to the Subcontractor's attention by Monadnock
      shall be corrected immediately. If the Subcontractor does not take corrective
      action within the time required by the Monadnock, Monadnock may remedy
      the situation at the Subcontractor's expense.
    • This Subcontractor shall submit copies of their Safety and Hazard
      Communication Programs along with all appropriate Material Safety Data
      Sheets to Monadnock prior to the start of work.
    • The job is a hard hat job. All of the Subcontractor's personnel on site shall
      wear hard hats at all times.
    • The Subcontractor shall hold Toolbox Safety Meetings for its workers on a
      regular basis, and provide a record of such meetings to the Owner or the
      Owner's representatives.
    • The Subcontractor shall provide in-line GFCI's for all power tools and
      equipment used by his personnel, and shall properly maintain all power tools
      and extension cords used by his personnel.
    • The Subcontractor shall immediately properly reinstall or repair as required
      any protection which it removes or causes to be removed for its work or other
      reasons, or bear the cost of such reinstallation or repair.
    • Alcohol, drugs and weapons will not be allowed on the site, and shall be cause
      for immediate expulsion from the site by the Monadnock.

20. It is understood that the Subcontractor and his representatives have adequately
    surveyed the property for the expressed purposes of determining the extent of
    work required to perform this contract. The Subcontractor accepts all conditions

AEC 00543

Edgemere                                                    June 18, 2004
Job # 2420

of the property "as-is", including but not limited to buildings, properties, streets, sidewalks, etc. Any and all material encountered by this subcontractor during the course of work has been fully anticipated by the subcontractor and is reflected in the contract price.

**General Notes:**

1. All filings and disconnects are to be done in an expeditious manner.
2. All inspections, signoffs, permits, and fees during the course of the contract are part of this contract. ~~Subcontractor to supply Monadnock with all necessary certificates of approval required for Certificates of Occupancy of new buildings to be built at these locations.~~
3. Any change shall be approved by Monadnock prior to performing the work, including any authorization for time-and-materials work. Any work performed without prior approval will not be reimbursed.
4. Monadnock may/will prepare and issue to the Subcontractor a list of work items deemed unsatisfactory which shall be corrected during the normal course of work on a timely basis.
5. This Subcontractor is responsible for the safety of persons and property, and compliance with all statutes, rules, and regulations applicable to the conduct of work.
6. This Subcontractor is responsible for the collection and disposal of all debris created in their operation of work at the job site and shall leave all adjacent public areas, including the sidewalk clean and free of debris at the end of each day.



Rider 2: Scope of Work – Demolition   Page 4 of 4

AEC 00544

July 18, 2005

**CERTIFIED MAIL / RETURN RECEIPT REQUESTED**

Josephine Hornby
Monadnock Construction
155 3rd Street
Brooklyn, NY.  11231

RE:    Company:          American Empire Surplus Lines Insurance Company
       Our Claim No.:    C61942-500
       Named Insured:    Monadnock Construction
       Date of Loss:     11/15/2004
       Policy Limits:    **$1,000,000**
       Plaintiff:        Maternik
       Suit Styled:      Maternik vs. Edgmere By-The-Sea and Monadnock
                         Construction
       Jurisdiction:     Kings County, NY. Supreme Court
       Amount of Suit:   Unspecified
       Defense Firm:     Wilson, Elser, Moskowitz et al.

Dear Ms. Hornby:

We hereby acknowledge receipt of the captioned Summons and Complaint filed against Monadnock Construction.  We have assigned the defense of this case to the captioned defense firm.

As this matter is now in litigation, we ask that you do not discuss it with anyone except a representative of our Company, a member of the named law firm, or your personal attorney should you decide to employ one.

The insurance policy, which protects Monadnock Construction for this loss, provides a limit of coverage as stated above.  Should a trial of this suit result in the rendering of a judgment against Monadnock Construction in excess of your policy limits, Monadnock Construction will be responsible for the excess amount.  To that extent Monadnock Construction may have an uninsured interest in this litigation and for that reason Monadnock Construction may wish to employ personal counsel at your own expense. Whether Monadnock Construction does so is your own decision and can be made at any time while this suit is pending.

If Monadnock Construction has an excess or umbrella insurance policy, you should place that carrier on notice of this loss.

The defense of this matter is being provided to you while reserving all rights under both the policy and the law. The reasons for this reservation of rights are outlined below:

AEC 00546

2

1.   The policy contains Form CG2134  01/87 entitled EXCLUSION-
     DESIGNATED WORK. This form states:

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Part
Products/Completed Operations Liability Coverage Part

### SCHEDULE

**Description of your work:**

This policy excludes any and all projects under a CCIP Contractor
Controlled Insurance Program.

This insurance does not apply to "bodily injury" or "property
damage" included in the "products-completed operations hazard"
and arising out of "your work" shown in the Schedule.

To the extent this form is applicable, coverage would not be afforded for defense or
indemnity related to this litigation.

2.   This policy contains form CG2154 1/96  entitled **Exclusion-
     DESIGNATED OPERATIONS COVERED BY A
     CONSOLIDATEDN(WRAP-UP0 INSURANCE PROGRAM.**  This form
     states:

This endorsement modifies insurance provided under the
following:  Commercial General Liability Coverage Part

### SCHEDULE

Description and Location of Operation(s):

**Any project, location or operation performed by the
"Insured"; the "insured's" agents' or subcontractors' with
respect to construction or demolition operations or other
contracting operations Insured under a (wrap-up) or any
similar rating plan.**

The following exclusion is added to paragraph 2., Exclusions of
Coverage A – Bodily Injury and Property Damage Liability
(Section I – Coverages):

This insurance does not apply to "bodily injury" or "property
damage" arising out of either your ongoing operations or
operations included within the "products-completed operations
hazard" at the location described in the Schedule of this
endorsement, as a consolidated (wrap-up) insurance program has

AEC 00547

3

been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

(1)    Provides coverage identical to that provided by this Coverage Part;

(2)    Has limits adequate to cover all claims; or

(3)    Remains in effect.

To the extent this exclusion is determined to be applicable, coverage for defense and indemnity of this matter would not be afforded.

Please keep the named law firm or this office advised at all times of Monadnock Construction's current address. If the above address is not correct or should change at any time, please notify us immediately. Your cooperation in this and all other respects is required in order to keep in force the protection provided by your policy.

Sincerely,

Larry Potrafke
Vice President-Claims

Cc     Security Risk Managers
       PO Box 120099
       Nashville, TN.  37212

       Cook Hall & Hyde
       PO Box 9100
       Bethpage, NY.  11714

       Robert T. Adams
       Wilson, Elser, Moskowitz, Edelman, & Dicker, LLP
       3 Gannett Drive
       White Plains, NY 10604

AEC 00548

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

3 Gannett Drive, White Plains, NY 10604   Tel: (914) 323-7000   Fax: (914) 323-7001

*New York • Los Angeles • San Francisco • Washington, DC • Newark • Philadelphia • Baltimore • Miami • Chicago • White Plains, NY*
*Dallas • Albany, NY • San Diego • Houston • Garden City, NY • Boston • McLean, VA • London*
*Affiliate Offices:  Paris • Berlin • Cologne • Frankfurt • Munich*

———

www.wemed.com

Robert T. Adams
A Member of the Firm
AdamsR@wemed.com

October 6, 2005

**VIA CERTIFIED & REGULAR MAIL**

**PRIVILEGED & CONFIDENTIAL**

Gateway Demolition Corp.
134-22 32nd Avenue
Flushing, New York 11354

<div style="margin-left:2em">

Re:   Maternik v. Edgemere By-The-Sea Corp., et al.
Date of Loss   :        November 15, 2004
Our File No.   :        01082.00133

</div>

Dear Sir/Madam:

This law firm has been retained to protect the interests of defendants, Edgemere By-The-Sea, Corp. and Monadnock Construction, Inc., in a lawsuit which has been commenced in Supreme Court, Kings County, Index Number 1818/05.

This lawsuit concerns an accident involving plaintiff, Grzegorz Maternik, who was an employee of Gateway Demolition Corp., a subcontractor hired by Monadnock.  Monadnock was the general contractor, and the owner of the project was Edgemere By-The-Sea Corp.   Gregorz Maternik, a Gateway employee who allegedly was injured at a construction project at 40-11 Beach Channel Drive in Queens County on November 15, 2004.  Our investigation has revealed that this alleged incident arose out of the work performed by your company.

Monadnock Construction, Inc. was a general contractor at that site.  Monadnock contracted with Gateway Demolition to perform certain duties at this construction site.

Pursuant to a written agreement between Monadnock Construction, Inc. and Gateway Demolition Corp., Gateway Demolition Corp. is obligated to indemnify and hold harmless Monadnock Construction, Inc. and Edgemere By-The-Sea Corp.

In addition, your policy which provided coverage to Gateway Demolition Corp., under policy number GLW77905-1, includes Monadnock Construction, Inc. and Edgemere By-The-Sea Corp. as additional insureds.  The effective date of this policy was May 9, 2004 to May 9, 2005.

1011442.1

AEC  00448

Page 2

It is hereby demanded on behalf of Monadnock Construction, Inc. and Edgemere By-The-Sea Corp. that Gateway Demolition accept this tender and defense pursuant to its contractual and policy obligations.

Enclosed please find a copy of plaintiff's Summons and Complaint, which was recently served upon defendants, Monadnock Construction, Inc. and Edgemere By-The-Sea Corp. In addition, please find a copy of Certificate of Liability Insurance evidencing that Monadnock Construction, Inc. and Edgemere By-The-Sea Corp. are additional insureds on a policy of insurance issued by Westchester Fire Insurance Co. to Gateway Demolition Corp.

Upon receipt of this correspondence, please contact the undersigned to discuss the foregoing tender and the assignment of counsel to represent the interests of Monadnock Construction, Inc. and Edgemere By-The-Sea Corp.

Thank you for your prompt cooperation in this regard.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Robert T. Adams

Cc.

Parmel Agency
45 Executive Drive
Plainview, New York 11803

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
1011442.1



**ace westchester
specialty group**

ACE
Westchester Specialty Group
Claims
PO Box 100008
Roswell, GA 30077-7008

(678) 795-4071 *tel*
(800) 592-5098 *fax*
(800) 982-9826 *toll free*

Susan.farrar@ace-ina.com
www.ace-ina.com

Susan J. Farrar
*Senior Claims Specialist*

October 19, 2005

CERTIFIED MAIL/ RETURN RECEIPT REQUESTED
(7004 2890 0000 6970 8408)

Robert T. Adams
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Dr.
White Plains, NY  10604

Ref:    *Maternik v Edgemere By-The-Sea Corp., et.al*
Supreme Court  County of Kings

| | |
|---|---|
| Our Claim Number: | JY05J018217-1 |
| Our Insured: | Gateway Demolition Corp. |
| Insuring Company: | Westchester Fire Insurance Company |
| Plaintiff: | Grzegorz Maternik |
| D/L: | November 15, 2004 |
| Location: | 40 -11 Channel Dr.  Queens, NY |
| Your Clients: | Edgemere By-The-Sea and Monadnock Construction |

Dear Mr. Adams,

On October 6, 2005, you tendered this matter for defense, indemnity, and additional insured status on behalf of Edgemere By-The-Sea and Monadnock Construction (the "Tendering Parties").

This tender was directed to our insured, Gateway Demolition Corporation.  Westchester Fire Insurance Company  issued commercial general liability policy GLW 779005, effective 05/09/2004 through 05/09/2005, to Gateway Demolition Corporation (the Westchester policy).  The Westchester policy provides limits of $1,000,000 each occurrence subject to a $2,000,000 general aggregate.

The Westchester policy contains the following endorsement regarding additional insureds:

   ADDITIONAL INSURED -- OWNERS, LESSEES OR CONTRACTORS -- (FORM B)

   This endorsement modifies insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART.

                                    SCHEDULE

   **Name of Person or Organization**

One of the ACE Group of Insurance & Reinsurance Companies

As required by contract, provided the contract is executed prior to loss.

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

Westchester must review the contract that you refer to in your letter notifying Gateway of this occurrence in order to see if this endorsement applies. Westchester does not have a copy of this contract and we request that you supply it as soon as possible. Further, we are unable to analyze any indemnity agreement that may be incorporated into the contract you allege exists between the Tendering Parties and our insured. Based solely on your letter, Westchester must respectfully deny your request for defense, indemnification and additional insured status for the Tendering Parties.

However, even if the Tendering Parties may qualify as an additional insured under the Westchester policy, which we specifically deny at this time, the Tendering Parties are subject to the following terms and conditions in the Commercial General Liability policy, as modified by the New York Changes Commercial General Liability Coverage Form endorsement, which states, in relevant part:

### SECTION I - COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    **Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III, Limits of Insurance; and

(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

b.    This insurance applies to "bodily injury" and "property damage" only if:

AEC 00330

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no insured listed under Paragraph 1 of Section II – Who Is An Insured, and no employee authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1 of Section II – Who Is An Insured, or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1 of Section II – Who Is An Insured, or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

2.    Duties in the event of Occurrence, Offense, Claim or Suit

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

AEC 00331

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, you must:

(1)    Immediately record the specifics of the claim or "suit" and the date received; and

(2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)    Assist us, upon or request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Westchester never received timely notice of the "occurrence" as that term is defined in the Westchester policy. The loss occurred on November 15, 2004. The Summons and Complaint was filed June 10, 2005. However, your tender for defense, indemnity and additional insured coverage was not made until October 6, 2005, a period of approximately four months from filing of the Summons & Complaint and almost one year from the date of the "occurrence". Your tender for coverage on behalf of the Tendering Parties was Westchester's first notification of the "occurrence" and first notification of the "suit." The failure to provide timely notification to Westchester of the "occurrence" is a violation of the notice provisions of

AEC 00332

the Westchester policy. In addition, the failure to notify and provide Westchester with copies of the suit papers is a further basis upon which to deny coverage to the Tendering Parties.

This coverage position is based upon information presently known to Westchester. Therefore, if you have any facts or other information which may impact the position of Westchester, please forward same to the undersigned for further consideration of coverage. Westchester does not waive its rights to assert additional coverage defenses should other coverage issues become apparent.

Our agreeing to review any documents you submit should not be construed as an admission of coverage. It is to be understood that any action taken by Westchester in the past or future does not constitute and should not be considered as a waiver of any rights or defenses available to Westchester and shall not estop Westchester from asserting, at a later date, any rights or defenses that may be available or at any time hereafter.

If you have any questions regarding Westchester's position, please contact the undersigned.

Sincerely,

Susan J. Farrar CCLA, AIC as an authorized representative of
Westchester Fire Insurance Company

C:
Kenneth Frohlick
Gateway Demolition Corp.
134 – 22 32nd Ave.
Flushing, NY 11354

Daniel W. Isaacs, Esq.
Attorney for Plaintiff, Grzegorz Maternik
401 Broadway Ste. 612
New York, NY 10013

Parmel Agency
45 Executive Drive
Plainview, NY 11803

Martha Toner
Combined Underwriting Agency
14 Front St., Ste. 201
Hempstead, NY 11550

Page 5/6

AEC 00333

Page 6/6

AEC 00334

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------ X

GRZEGORZ MATERNIK,                                    Index No.: 18148/05

                Plaintiff(s),

        -against-                                **THIRD PARTY**
                                    **COMPLAINT**

EDGEMERE BY-THE-SEA CORP. and
MONADNOCK CONSTRUCTION, INC.,

                Defendant(s).
------------------------------------------------------------------ X
EDGEMERE BY-THE-SEA CORP. and                         Third-Party Action
MONADNOCK CONSTRUCTION, INC.,

                                  Index No.:  76287/05

            Third Party Plaintiff(s),

                                Date Purchased:  12/15/2005

        -against-

GATEWAY DEMOLITION CORP.,

                Third Party Defendant(s).
------------------------------------------------------------------ X

    The Defendants/Third-Party Plaintiffs, EDGEMERE BY-THE-SEA CORP. and

MONADNOCK CONSTRUCTION, INC., by their attorneys WILSON, ELSER,

MOSKOWITZ, EDELMAN & DICKER LLP, as and for a third-party complaint against the

above named Third-Party Defendant GATEWAY DEMOLITION CORP. (hereinafter

"GATEWAY") alleges upon information and belief that:

1053623.1

AEC 00375

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST
## GATEWAY DEMOLION CORP.

1.    At all times hereinafter mentioned, third-party plaintiffs, Edgemere by-the-Sea and Monadnock Construction, Inc. was and are domestic corporations duly authorized to transact business in the State of New York.

2.    At all times hereinafter mentioned, third-party plaintiffs, Edgemere by-the-Sea and Monadnock Construction, Inc. was and are a business entity doing business in New York.

3.    At all times hereinafter mentioned, the third-party defendant, GATEWAY DEMOLITION CORP., was and is a domestic corporation, duly organized and existing pursuant to t h e  laws of the State o f  New York.

4.    At all times hereinafter mentioned, third-party defendant, GATEWAY DEMOLITION CORP., was and is doing business in the State of New York.

5.    This action arises out of transactions or occurrences in the State of New York.

6.    Prior hereto, plaintiff commenced an action in this court. Annexed hereto and made a part hereof are copies of p l a i n t i f f ' s  s u m m o n s  a n d  c o m p l a i n t ,  a m e n d e d  s u m m o n s  a n d  c o m p l a i n t  a n d  d e f e n d a n t ' s  a n s w e r  heretofore served in said action.

7.    It is alleged in the complaint of plaintiff, without admitting the truth thereof, that on November 15, 2004, plaintiff suffered personal injuries and damages and the injuries sustained are attributed to the negligence of third-party plaintiffs.

8.    If damages were sustained as alleged in the complaint, it was due to the negligence and carelessness of the t h i r d - p a r t y  defendant and/or third-party defendant's agents, servants and/or employees.

1053623.1

AEC 00376

9.    If a judgment or settlement is recovered by plaintiff from the third-party plaintiffs, such recovery will have come about because of the negligence, carelessness, and recklessness of the third-party defendant.

10.    By reason of the foregoing, the third-party defendant is liable over to the third-party plaintiffs in common-law indemnification or contribution for all or third-party defendant's proportionate share of any judgment or settlement that the plaintiff may recover from the third-party plaintiffs, based upon the relationship between the third-party plaintiffs and third-party defendant.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST GATEWAY DEMOLITION CORP.

11.    The third-party plaintiffs repeats, reiterates, and realleges each and every allegation set forth in the paragraphs numbered "1" through "10", inclusive, with the same force and effect as if set forth herein at length.

12.    Third-party defendant and/or third-party defendant's agents, servants, and/or employees are solely, primarily, and actively negligent.

13.    If the injuries and damages were sustained by plaintiff as alleged in the complaint through any negligence other then the negligence of plaintiff, it was due to the sole, primary, and active negligence of the third-party defendant and/or third-party defendant's agents, servants, and/or employees.

14.    If a judgment or settlement is recovered by plaintiff from the third-party plaintiffs, it will have come about because of the sole, primary, and active negligence of the third-party defendant and/or third-party defendant's agents, servants, and/or employees in the breach of third-party defendant's obligations pursuant to contracts and agreements entered into between the third-party plaintiffs and third-party defendant.

15.    If a judgment or settlement is recovered by plaintiff from the third-party plaintiffs, said third-party plaintiff will be entitled to judgment over and against said third-party defendant for all of said judgment.

AEC 00377

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST
## GATEWAY DEMOLITION CORP.

16.    Third-party plaintiffs repeats, reiterates, and realleges each and every allegation contained in the paragraphs numbered "1" through "15", inclusive, with the same force and effect as if set forth herein at length.

17.    Prior to November 15, 2004, third-party plaintiffs entered into an agreement with third-party defendant. Third-party plaintiffs begs leave to refer to the full terms and conditions of said agreement upon the trial of this action.

18.    Pursuant to the terms of said contract, third-party defendant agreed to indemnify and hold harmless third-party plaintiffs from claims such as those being made by plaintiff against third-party plaintiffs in the matter at bar.

19.    If a judgment or settlement is recovered by plaintiff from the third-party plaintiffs, said third-party plaintiffs will be entitled to indemnity and judgment over against the third-party defendant for all of such judgment, settlement, or contribution as a result of the breach by said third-party defendant of third-party defendant's obligations under said agreement.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST
## GATEWAY DEMOLITION CORP.

20.    The third-party plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs "1" through "19", inclusive, with the same force and effect as if set forth herein at length.

21.    Prior to November 15, 2004, third-party plaintiffs and third-party defendant entered into a contract, the full terms and conditions of which third-party plaintiff begs leave to refer at the time of trial.

22.    Pursuant to said contract, third-party defendant was obligated to obtain public liability insurance coverage for the benefit of third-party plaintiffs such as would insure third-party plaintiffs for the suit of plaintiff herein, which insurance would pay the amount for which third-party plaintiffs are liable to plaintiff

1053623.1

AEC 00378

and pay for the defense of the suit brought by plaintiff.

    23.    Third-party defendant failed to obtain said insurance.

    24.    By reason of the foregoing, third-party defendant is liable to third-party plaintiffs for all damages resulting from the breach of contract by said third-party defendant in failing to obtain insurance on behalf of said third-party plaintiffs.

**WHEREFORE,** third-party plaintiffs demands judgment over and against the third-party defendant for all of third-party plaintiff's proportionate share of any judgment which may be recovered by plaintiff against third-party plaintiffs or, in the event that judgment is not rendered pursuant to the first, second, or third causes of action, third-party plaintiffs demands judgment on the fourth cause of action for the damages sustained as a result of the breach of contract by third-party defendant, together with the costs, disbursements, counsel fees and accrued interests thereon.

Dated:    White Plains, New York
            December 7, 2005

                      Yours, etc.,

          WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
          By:

              Alexander Gizzo
              Attorneys for Defendants/Third-Party
              Plaintiffs
              EDGEMERE BY-THE-SEA and
              MONADNOCK CONSTRUCTION, INC.
              3 Gannet Drive
              White Plains, New York 10604
              (914) 323-7000
              Our File No.: 01082.00133

TO:    LAW OFFICES OF DANIEL W. ISAACS, PLLC
        Attorneys for Plaintiff
        Grzegorz Maternik
        401 Broadway, Suite 612
        New York, New York 100136
        (212) 925-3000

1053623.1

AEC 00379

GATEWAY DEMOLITION CORP.
134-22 32nd Avenue
Flushing, New York 11354

AEC 00380



## ace westchester
## specialty group

ACE
Westchester Specialty Group
Claims
PO Box 100008
Roswell, GA 30077-7008

(678) 795-4071 *tel*
(800) 592-5098 *fax*
(800) 982-9826 *toll free*

Susan.farrar@ace-ina.com
www.ace-ina.com

**Susan J. Farrar**
*Senior Claims Specialist*

December 21, 2005

Via fax:    718.461.6558

Ken Frohlick, President
Gateway Demolition Corp.

Ref:    *Grzegorz Maternik v Edgemere By-The. Sea Corp et.al. v Gateway Demolition Corp.*

Our Claim Number:    JY05J018217-1
Our Insured:    Gateway Demolition Corp.
Insuring Company:    Westchester Fire Insurance Company

Dear Mr. Frohlick,

We have received your fax of December 19, 2005 along with a copy of the Third Party Complaint filed against Gateway Demolition Corp. ("Gateway").

Please review our letter of October 19, 2005 more closely.  You should note that we have not denied coverage to Gateway for late notice but rather to the party seeking additional insured status, Edgemere By-The-Sea and Monadnock Construction.  Our position on late notice, as it relates to the tendering parties and our letter of October 19, 2005, remains unchanged.  Each insured, including those seeking additional insured status, has the obligation to provide timely notice.

We have assigned the defense of the Third Party Complaint, on behalf of Gateway, to local counsel.  We await a clearance of their conflict check.  Once their conflict clears, we will provide you with defense information in order to coordinate efforts to achieve a successful defense of the case.

Sincerely,

Susan J. Farrar  CCLA, AIC  as an authorized representative of
Westchester Fire Insurance Company

C:
Ellen Bayer   (via fax: 516.333.3140)
The Halland Companies

*One of the ACE Group of Insurance & Reinsurance Companies*

L&B- **188**